## Watson *versus* The Commonwealth.

1. An alibi is as much a traverse of the crime charged as any other defence, and proof tending to establish it, though not clear. may, with other facts of the case, raise a reasonable doubt of the guilt of the accused.

2. Where the Commonwealth rests upon positive and undoubted proof of the prisoner's guilt, it should not be overcome by less than full, clear and satisfactory evidence of the alleged alibi.

3. Testimony tending to weaken faith in a corrupt witness, is as material to the ends of justice as that which shakes confidence in an inference from circumstances.

4. It is competent for a jury to convict on the testimony of an accomplice alone, but it is almost the universal opinion that the testimony of the accomplice should be corroborated as to the person of the prisoner against whom he speaks. Some fact should be proved by testimony independent of the accomplice, which taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.

5. Incompetent and impertinent testimony should be rejected as quickly and surely in the trial of a criminal case as in a civil. If offered testimony be irrelevant, that is sufficient cause for its exclusion, and a pertinent fact should not be proved by incompetent evidence. The rules of evidence should be as severely applied when the trial may result in the defendants' imprisonment, as when it could only result in fixing him for a debt.

October 12th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Oyer and Terminer of *Allegheny county :* Of October and November Term 1879, No. 144.

Indictment of Alvin and George Watson for burglary.

The defendants were jointly indicted with Humphrey Campbell and W. H. Franks for a burglary alleged to have been committed at the house of Isaac Irwin, in Allegheny county, on the night of October 16th 1877.   The defendants alone were tried, the indictment against Campbell having been *nol. prossed* and Franks in the penitentiary, and no preliminary hearing had as to him.

Upon the trial it was proved, beyond all doubt, that a burglary had been committed, as alleged, and that Campbell had been an active participant in it.   The Commonwealth's witnesses identified Campbell as one of the burglars, beyond all doubt, independent of his own testimony.   The controversy was as to the presence and participation of the Watsons.   As to Alvin Watson, Mrs. Irwin testified that she recognised him as one of the men who were in the house, but there was no testimony positively implicating George other than that of Campbell, the accomplice. For the purpose of corroborating Campbell, the Commonwealth offered and the court admitted, under exception, testimony as to the conduct and acts of Campbell in the absence of the defendants, and with which the defendants were in no wise connected other than by Campbell's testimony.

[Watson *v.* Commonwealth. ]

The court also admitted evidence that Franks, the other defendant, who was not on trial, was acquainted with the Irwin premises; had worked there; that he was then in the penitentiary, and that he had shortly before served a term in the same place, and that he was a brother-in-law of George W. Watson.

The defendants called a number of witnesses to prove the whereabouts of both the defendants on the night in question, and also testimony to show that Alvin, at that time, wore his beard differently so as to entirely change his appearance.

The defendants were convicted, and after a motion for a new trial was overruled were sentenced, when they took this writ, and made the following assignments of error, which will show the questions raised in the case:

1. The court erred in admitting evidence of Campbell as to Franks's whereabouts at the time of trial.

2. In admitting evidence of Campbell as to Franks's acquaintance and relationship with the Watsons.

3. In admitting evidence of Mrs. Margaret Irwin as to previous knowledge of and acquaintance with Franks, and that he had worked at Mr. Irwin's before that time.

4. In admitting paper as follows:—

| | |
|---|---|
| Commonwealth of Pennsylvania *v.* W. H. Franks. | Westmoreland county, August Sessions, 1875, convicted and sentenced to two years imprisonment, &c., on the twenty-third day of October 1875, in Western Penitentiary, Penna. |

Received of John Guffy, High Sheriff of the county of Westmoreland, this twenty-sixth day of October 1875, the body of the above-named prisoner.

Attest:                                        EDWARD S. WRIGHT,
JOHN MILLER, Clerk.                                    Warden.

And testimony of Sheriff Guffy under the following offer: Commonwealth proposes to prove by Sheriff Guffy that he is acquainted with the handwriting of Edward S. Wright, the warden of the Western Penitentiary in Allegheny City; and furthermore that he took to the prison and delivered to the warden the body of W. H. Franks, one of the alleged robbers in this case. These for the purpose of showing the whereabouts of Franks.

5. In admitting evidence of Peter Dressler that the W. H. Franks who was convicted in Westmoreland county, was the same man who is charged in this indictment.

6. In refusing the following: On the part of the defence, it was

[Watson *v.* Commonwealth.]

moved to strike out all the evidence that has been given in this case connecting Franks with this transaction.

PER CURIAM.—For the reason that the testimony alluded to has already been received under objection, and that any error that has been committed is already in such shape as may be the subject of review, the motion to strike out is overruled.

7. In admitting evidence of Mrs. Campbell and H. O. Campbell, under the following offer :—

Commonwealth proposes to prove by this witness, to be followed by other evidence, that Humphrey Campbell returned in the morning after the burglary to his own home; that he would not come into the kitchen where his wife had a light, but knocked at the door and asked for a basin of water to be brought out to him, and that then he washed, but not until his wife had glanced at him and saw some black on his face, and that the water left in the basin was itself discolored and blackened. For the purpose of corroborating Humphrey Campbell.

8. In admitting evidence of Mrs. Campbell as to preparations made by her husband for the robbery—the defendants not being in any wise connected therewith.

9. In admitting in evidence the following abstract of a record

Commonwealth  
    *v.*        } In the Court of Oyer and Terminer  
Humphrey Campbell and   of Westmoreland county, Pennsyl-  
  Bartholomew Foley.     vania, No. 1, May Session, 1852.

Indictment, burglary. True bill, May 29th 1852. Tried by a jury and verdict not guilty. Abstract from the record.

             Attest:                   J. W. WILSON,  
May 1st 1879.                                   Clerk.

{ Seal of the Court of Oyer and }  
{ Terminer of Westmoreland Co. }

Defence objected to this evidence as incompetent and irrelevant, and furthermore, if it were entirely competent, the facts cannot be proven by this abstract, but must be proven by a properly certified copy of the entire record.

10. In admitting evidence of Peter Dressler, under the following offer :—

Counsel for Commonwealth propose to prove by the witness on the stand, the county detective, that he went to the state of Kansas armed with a requisition from the governor of Pennsylvania upon the governor of Kansas, for the body of George W. Watson, one of the defendants in this case ; that having received full authority of the governor of Kansas, he proceeded to Watson's house and made the arrest. Whereupon a writ of habeas corpus was issued at the instance of Watson to test the officer's right to bring him to

Pennsylvania under the warrant; that that question was argued elaborately for more than one day by counsel on each side, and that the judge remanded the prisoner to Mr. Dressler to proceed to Pennsylvania with him. He proceeded on his way a certain distance when another interference was had by telegraph at the instance of George W. Watson; and to prove that Mr. Dressler's course was greatly marked by interference; that he had Watson chained to his arm; that he was compelled and did leave the direct line of the railroad and passed across the country with the prisoner where no telegraph could reach him, for the purpose of getting out of Kansas, and in that way he reached Pennsylvania.

Objected to as irrelevant and incompetent; that if an application was made to the courts in Kansas for a writ of habeas corpus, it is a matter of record there, and can only be proved by the record itself; further, that if the application was made, it shows simply that the defendant, George W. Watson, was availing himself of his legal right to inquire into the validity of his arrest.

Counsel for Commonwealth withdrew all the offer except the last part about the telegram, and after the habeas corpus was decided and witness was on his way back.

PER CURIAM.—We will receive all the evidence suggested after the right of the prisoner had been passed upon by the court on the first application for the writ of habeas corpus.

11. The court erred in charging the jury as follows:—

If, therefore, in the first place the Commonwealth has satisfied you beyond a reasonable doubt, I mean to say in looking at the evidence, the Commonwealth's, it has satisfied you beyond a reasonable doubt that the defendants were present at and participating in the burglary in question, it will be your duty to convict, unless the defendants, having set up the defence of alibi, have satisfied you that this, their defence, is well taken. What I want to have you understand is, if you come to the conclusion and are satisfied beyond a reasonable doubt that the defendants were then and there participants in the burglary, then it will be your duty to convict, unless the defendants have made out their case of alibi or that they were elsewhere, and in that case it will be your duty to acquit.

12. In charging as follows:

"The case, I need not say to you, whilst containing a great deal of direct testimony, has in it a large element of what is known to the law and lawyers as circumstantial evidence, that is, evidence resting upon detached circumstances, isolated pieces of evidence, all of which are put into the case in the estimation of the Commonwealth with the belief and for the intent to prove certain facts. I need not say that very often circumstantial evidence is more to be depended upon than absolute assertion. Because witnesses may falsify, may testify to that which is not true, but certain circum-

[Watson *v.* Commonwealth.]

stances, certain physical facts which cannot be gainsaid, and which of course could not lie, often compel conclusions where words uttered would not. Now these elements are in the case, and without expressing any opinion upon them, we leave it to you to say in the light of these circumstances, in the light of this spoken testimony coming from the mouths of witnesses, and upon a careful consideration of all the facts in the case to state whether or not these parties are guilty or innocent."

13. In charging as follows, viz.: "The defence, outside of the allegation that the Commonwealth has not made out a case, and which it is for you to say, is an alibi."

The eighth point of the defendants, which the court affirmed, was as follows:

8. That the Commonwealth must make out the guilt of each of the defendants, beyond a reasonable doubt; and if, from the evidence in the cause, they have a reasonable doubt as to the identity of the defendants, or either of them, they must acquit as to such defendant.

*M. Swartzwelder, H. H. McCormick* and *Blakeley & Bigham,* for plaintiffs in error.

*John S. Robb,* District Attorney, *Robert M. Gibson* and *W. S. Patterson,* for the Commonwealth.

Mr. Justice TRUNKEY delivered the opinion of the court, October 25th 1880.

An alibi is as much a traverse of the crime charged as any other defence, and proof tending to establish it, though not clear, may, with other facts of the case, raise a reasonable doubt of the guilt of the accused. When the evidence is so imperfect as not to satisfy the jury they will not find the fact. Where the Commonwealth rests upon positive and undoubted proof of the prisoner's guilt, it should not be overcome by less than full, clear and satisfactory evidence of the alleged alibi. But the evidence tending to establish an alibi, though not of itself sufficient to work an acquittal, shall not be excluded from the case, for the burden of proof never shifts, but rests upon the Commonwealth throughout, upon all the evidence given in the cause taken together, to convince the jury, beyond a reasonable doubt, of the prisoner's guilt: Turner *v.* Commonwealth, 5 Norris 54. Stress was there put on the fact that the case depended on circumstantial evidence, and that the instruction excluded the evidence of an alibi from the consideration of the jury if it failed to reach sufficient strength alone to work an acquittal. Where the testimony relied on to convict is mainly that of an accomplice, the reason is quite as strong for requiring all the evidence to be considered. Direct testimony from a corrupt source

[Watson v. Commonwealth.]

should receive as careful scrutiny as circumstantial evidence. In one case the inquiry is of the credibility of the witness ; in the other, if the circumstances be clearly proved, inquiry is whether the alleged fact is the only reasonable inference. Testimony tending to weaken faith in a corrupt witness is as material to the ends of justice as that which shakes confidence in an inference from circumstances.

The defendants' eighth point was rightly affirmed. This was followed by an explanation of a reasonable doubt and a substantial repetition of the point. Then, after calling attention of the jury to the evidence of an alibi, the court say : " If, therefore, in the first place, the Commonwealth has satisfied you beyond a reasonable doubt, I mean to say, in looking at the evidence, the Commonwealth's, it has satisfied you beyond a reasonable doubt, that the defendants were present at and participated in the burglary in question, it will be your duty to convict, unless the defendants, having set up the defence of alibi, have satisfied you that this, their defence, is well taken. What I want to have you understand is, that if you come to the conclusion, and are satisfied beyond a reasonable doubt, that the defendants were there and participants in the burglary, then it will be your duty to convict, unless the defendants have made out their case of alibi, or that they were elsewhere, and in that case it will be your duty to acquit." This language has the merit of being easily understood. If the jury failed to find an alibi, all testimony tending to establish it was excluded from their consideration. Immediately preceding its utterance the jury were told that " the defence, outside of the allegation that the Commonwealth has not made out a case, and which it is for you to say, is an alibi." Nothing could be plainer than that the testimony of the Commonwealth was alone submitted on which the jury were to determine whether the defendants were guilty if they were not satisfied the alibi was proved. Such emphatic restriction eclipsed the defendants' eighth point, previously affirmed, and was error.

Complaint is made of the remarks of the court respecting circumstantial evidence ; but we are not convinced that they contain error. This case depended chiefly on direct testimony, and it can hardly be said that the charge on the circumstantial was inadequate. Nor were the statements untrue, for such evidence is often more to be depended on than the absolute assertion of a witness who is without credit, and it may compel belief of a fact when the positive assertion of an impeached witness would go for naught. If counsel desired instructions, such as that the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them all ; and that circumstantial evidence against the accused must be such as to exclude, to a moral certainty, every hypothesis but that of his guilt of the offence imputed to him, to warrant his conviction, they

[Watson *v.* Commonwealth.]

could have had them by putting proper points.   As a general rule a court will not be convicted of error for omitting to charge on a matter not requested.   Here the circumstances by themselves were entirely insufficient to establish guilt of the accused, but could be considered with the direct evidence.

Numerous exceptions were taken to the admission of testimony offered for the purpose of corroborating Campbell.   It is competent for a jury to convict on the testimony of an accomplice alone.   But the source of this testimony is so corrupt that it is deemed unsafe to rely upon, and the court always consider it their duty to advise a jury to acquit, where there is no evidence corroborative of the accomplice.   Corroboration need not extend to the whole testimony of the accomplice ; but it being shown that he has testified truly in some particulars, the jury may infer that he has in others.   It is almost the universal opinion that the testimony of the accomplice should be corroborated as to the person of the prisoner against whom he speaks.   Some fact should be proved by testimony, independent of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.   To prove that the accomplice had told the truth in relation to irrelevant and immaterial matters which were known to everybody, would have no tendency to confirm his testimony involving the guilt of the party on trial : Commonwealth *v.* Bosworth, 22 Pick. 397 ; Reg. *v.* Addis, 6 C. & P. 388 ; Reg. *v.* Dyke, 8 Id. 261 ; Roscoe's Crim. Ev. 130.

Campbell was one of the four burglars who committed the crime, which was proved by undoubted and uncontroverted testimony, the court telling the jury it could not be gainsaid that it was committed, and the narrow issue for them to pass upon was whether the defendants, or either of them, were concerned in the burglary. Two of the four indicted were brought to trial.   Campbell says that the defendants and Franks, with himself, did the deed.   That he took from his home a pistol, blacking and flour ; that he washed the blacking from his face after his return, and that he had $10 of the stolen money, are facts that would be just as corroborative of his story had he named any other three persons as the fellows of his crime.   Such facts pointed to none but himself.

The Commonwealth offered an abstract from the record in a case against Campbell and Foley, in the Oyer and Terminer of Westmoreland county, at May Sessions 1852, for some undisclosed purpose ; whereupon defendants objected, that it was incompetent and irrelevant, and even if the record was competent, that paper was not ; but the offer was received.   It is not now pretended that the paper was admissible, it was not an exemplification of the record. The district attorney says it was informally introduced to answer an assertion of the defendants' counsel made to the court in the presence of the jury.   If the court tolerated the alleged unprofes-

[Watson v. Commonwealth.]

sional conduct, that did not make the paper competent, nor the record relevant to the issue.

No statute has been cited which provides that a receipt given by a warden of the penitentiary to the sheriff of the proper county for the body of a prisoner, shall be competent evidence on the trial of another prisoner.

In the face of the fact that George W. Watson, after his arrest, made no attempt to escape, and in the absence of proof that he procured any interference with the officer having him in charge, an offer was made and received that Dressler's course was greatly marked by interference; that he chained Watson to his arm; that he was compelled to leave the direct line of railroad and pass across the country where no telegraph could reach him, in order to get out of Kansas. Even the officer presumes Watson was ignorant of the fact that he was to be met by a telegram. It is difficult to conceive a reason for reception of that offer. That Watson had procured a hearing on a habeas corpus was his right, and no ground for introducing the subsequent acts of other people who charged the officer with kidnapping.

No one but Campbell identified Franks as one of the burglars. It was as little corroborative of him to prove by Mrs. Irwin that she was acquainted with Franks, who had worked for Irwin, as it would have been for her to say the same thing of Haines, of whom she attempted to speak and was stopped.

Had Franks been on trial, the prosecution could not have started out by showing that he was already a convicted and imprisoned felon. Persuasive as that might be to many minds that he committed this burglary, the law excludes such evidence in courts. If possible, there was a more palpable violation of the law of evidence in the admission of proof that Franks was a brother-in-law of one of the defendants, had committed another crime and was in the penitentiary. There was no necessity for the Commonwealth to account for the absence of Franks—it was enough that the defendants were being tried separately—and that she had convicted and shut him up was no reason for admission of testimony of the fact and that Watson was his relative.

The first ten assignments of error, except the sixth, are well taken. The sixth is not sustained, for many things testified to by Campbell connecting Franks with the transaction were admissible.

It is not to be understood that we deem every one of the errors in admission of testimony of such importance as to require reversal. Although an error was committed, if it worked no harm the cause will not be sent back for trial. In this case we think there was error in some matters of such gravity that it cannot be treated as harmless, and as there must be another trial, it is fitting that all the assignments be considered. Incompetent and impertinent testimony should be rejected as quickly and surely in the trial of a

[Watson *v.* Commonwealth.]

criminal case as in a civil.　If offered testimony be irrelevant, that is sufficient cause for its exclusion.　A pertinent fact should not be proved by incompetent evidence.　The rules of evidence should be as severely applied when the trial may result in the defendant's imprisonment as when it could only result in fixing him for a debt.

Judgment reversed, and the record, with this opinion, setting forth the causes of reversal, is remanded to the Court of Oyer and Terminer of Allegheny county for further proceedings.