# Commonwealth *v.* Klein, Appellant.

*Bribery—Councilmen—Evidence—Accomplice—Acts of March* 31, 1860, *sec.* 49, *P. L.* 382, *May* 23, 1874, *P. L.* 230.

1. The proviso in sec. 49 of the Act of March 31, 1860, P. L. 382, to the effect "that the accused shall not be convicted on the testimony of an accomplice unless the same be corroborated by other evidence, or the circumstances of the case" has no application to an indictment against a councilman under the Act of May 23, 1874, P. L. 230, for accepting bribes.

*Criminal law—Bribery—Accomplice—Evidence.*

2. No common law rule forbids a conviction upon the uncorroborated testimony of an accomplice, if his evidence satisfies the jury of the guilt of the accused beyond a reasonable doubt. It is the duty, however, of the trial judge to caution the jury as to the danger of convicting on the uncorroborated evidence of an accomplice.

*Criminal law—Bribery—Evidence—Pendency of ordinance.*

3. On the trial of an indictment against a councilman for accepting a bribe for his vote on a particular ordinance, where there is testimony that the defendant declared that councils would pass the ordinance over the mayor's veto, it is proper to admit evidence as to the pendency of the ordinance, and that it was in fact passed over the mayor's veto.

*Evidence—Competent and incompetent evidence—Review.*

4. The admission of incompetent evidence may not be a cause for reversal if it is rendered competent by other evidence at a later stage of the trial.

*Criminal law—Bribery—Accomplice—Evidence.*

5. On the trial of an indictment for bribery a witness was offered by the commonwealth for giving the bribe which the defendant was

charged with accepting. He was called as a witness, but did not testify until after his claim of privilege not to be required to give evidence that would criminate him, had been overruled by the court. No restriction was put upon his cross-examination for the purpose of ascertaining whether any inducement or promise had been held out to him or made. He was asked whether he expected to be tried or to plead. He answered that he would be guided by the advice of his counsel. *Held*, that under the circumstances this was as far as the witness ought to be required to go in revealing what was his intention or expectation.

*Evidence—Witness—Memorandum—Refreshing memory.*

6. A memorandum made by a witness immediately after his interview with a party in the case, may be used by him to refresh his memory, but he cannot use it for the purpose of reading to the jury what he had written.

*Criminal law—Bribery—Evidence.*

7. On the trial of an indictment for bribery where a witness who had been employed as a detective to investigate the conduct of the defendant, testifies as to similar investigations which he had made, it is not reversible error for the court to refuse to permit him to be asked whether he had detectives following the defendant immediately before the trial, and whether he had not claimed to have paid the defendant a sum of money for the purpose of influencing his conduct.

8. On the trial of an indictment for bribery a witness for the commonwealth may be permitted to testify that the defendant had declared that he was not innocent, but that there were others just as guilty as himself, and that he did not intend to be a goat for any person.

9. In such a case where the indictment charges the acceptance of the bribe for a vote in favor of a particular bank as a depository of public money, evidence that other banks which had been named as depositories had not paid any money to the defendant, is irrelevant.

Argued Oct. 27, 1909. Appeal, No. 21, April T., 1910, by defendant, from judgment of Q. S. Allegheny Co., Jan. T., 1909, No. 6, on verdict of guilty in case of Commonwealth v. John F. Klein. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for bribery. Before FRAZER, P. J.

At the trial the following offer was made:

Mr. Blakeley: We also offer the record in evidence for the

purpose of showing that this ordinance was vetoed on July 9, 1908, and passed over the veto on July 9, 1908.

Mr. Marron: This is objected to as incompetent and ir-relevant for any purpose whatever.

The Court: I think it is proper to show the veto and the passing of it over the veto.

Mr. Marron: Unless there would be something in the mes-sage to councils that might give notice to councils. The ob-jection of the mayor might be on a totally different subject not relevant to this proceeding and therefore the passage of it over his veto be of no importance here and would not add to the evidence in the case whatever.

Objection overruled. Exception. [1]

A. A. Vilsack was asked this question:

Mr. Blakeley: "Q. What did you refer to as additional money?"

Mr. Marron: We object to that because the thought of the witness is not material unless it was disclosed to the witness.

The Court: I think the question is proper. Objection over-ruled.

To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed. [2]

Mr. Ramsey: "A. Well, we had already paid $15,000 out and I referred to the $2,500 as why that was to be paid ad-ditionally.

Mr. Blakeley: "Q. Was that $15,000 paid in pursuance of any arrangement between you and Mr. Klein? A. No, sir."

Mr. Marron: Before the last question is answered, defend-ant's counsel moves to strike from the record the question and answer preceding that, because it appears now that it was simply the thought of the witness, and is in contradic-tion of his testimony that any money was paid with his per-sonal knowledge to this defendant, John F. Klein.

The Court: He didn't say that was paid. He said they had paid $15,000.

Mr. Marron: That would not be material in this case un-less it was followed in this case by evidence that it was paid to Klein.

Motion refused. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed. [3]

Mr. Marron: Mr. Vilsack, I will ask you finally, do you expect to plead to this bill?

Mr. Blakeley: Objected to.

. Objection sustained. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed. [4]

. Mr. Marron: "Q. Well, do you expect to be tried or plead?"

Mr. Blakeley: I object to that if your honor please.

"A. It is all up to my attorney, Mr. Marron, I will consult him about that."

Mr. Marron: If the court please, taking the situation of this case on the list, that the Ramsey case was the first, the Vilsack second, and the Klein third, and also the fact that this witness's like all other witness's credibility, is a question for the jury, it seems to me very important as to what his expectations are,—whether he is to be tried or to plead.

Mr. Blakeley: Well, I object.

Objection sustained. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed. [5]

Mr. Marron: Counsel for defendant on cross-examination of this witness, and for the purpose of affecting his credibility now propose to ask him whether or not, he having been the second case on the trial list of this court and the case prior to that of John F. Klein now being tried, for the offense of bribing John F. Klein, and having in the meantime communicated voluntarily with the district attorney, and later for the purpose of impressing the jury has his privilege claimed in court, a privilege not recognized by the constitution or laws of Pennsylvania, counsel now propose to ask him whether or not he expects to be tried or to plead, and this for the purpose of affecting his credibility.

Mr. Blakeley: Objected to, the statement not being founded on fact, and being incompetent and irrelevant.

Objection sustained. To which ruling of the court counsel

for the defendant request an exception. Exception allowed and bill sealed. [6]

Defendant, by his counsel, objects to the reading of the memorandum by the witness, he doing this reading while the objection is being made, inasmuch as he has not laid the ground for the use of the memorandum at all, beyond the fact of a date, that being his answer to the last question on this subject.

The Court: The witness having testified that the memorandum to which he refers was made immediately after the conversation with the defendant; he may refer to it for the purpose of refreshing his memory, but not for the purpose of reading what he has written to the jury.

Objection overruled. Exception noted and bill sealed at the request of the defendant's counsel. [7]

Wilson, the detective, was asked this question:

"Q. You claim in the transaction to have paid John F. Klein money yourself, don't you?"

Objected to as not cross-examination.

Mr. Marron: I have a right to show on cross-examination that he claims to have paid John F. Klein on a certain day in the Duquesne Hotel, this city, $500 for the purpose of influencing his conduct as a member of councils; that in connection with the cross-examination of this witness, for the purpose of impeaching his credit, and for the purpose of showing his interest as a witness, and that more particularly.

Mr. Blakeley: This witness has been put on the stand for one purpose. He has testified to that particular fact, and as to that particular thing Mr. Marron has a right to cross-examine him, with respect to his credibility; but he has no right to go into other collateral facts that do not attack his credibility or interest.

Mr. Marron: Will you say, Mr. Blakeley, that the payment of money to a member of council, for the purpose of influencing his vote, is not a criminal matter?

Mr. Blakeley: It was a matter not proper in the cross-examination of this witness. This jury is trying whether John F. Klein made any statement reference to having re-

ceived any money from the officers of these six banks, and the witness has been interrogated with respect to that, and that alone.

Mr. Marron: There is a class of cases—we think this is very important—in which persons may strive by certain acts, which otherwise might be criminal, to obtain evidence where suspicion has been aroused, and that is where they act in connection with the public authorities; but this man, having testified he came from the city of Scranton to Pittsburg, being employed by, so far as we know, a political party of very small dimensions and that he met two men only, his employer, Mr. Weil, and his associate, Bates—we think if we show in connection with that, that this man undertook to bribe, or claims to have bribed, and testifies he actually paid a bribe to a councilman of the city of Pittsburg, it seems to me he is not protected by the law, and it affects very seriously his credit.

The Court: It might be so under certain circumstances. I think in this case we will confine you strictly to the German National Bank matter, and we will not permit this hearing to take in any other matters.

Objection sustained. Exception noted and bill sealed at the request of the defendant's counsel. [8]

"Q. You have had two, three or four men for the last four or five weeks, the last three weeks particularly, following Mr. Klein night and morning, to and fro from his home and through the city of Pittsburg?"

Objected to as incompetent and irrelevant and not cross-examination. Objection sustained. Exception noted and bill sealed at the request of the defendant's counsel. [9]

The commonwealth having produced E. G. Lang, against the appellant, made the following offer:

The commonwealth offers to prove by the witness on the stand that in a conversation had with the defendant on or about one of the dates mentioned, the defendant said that he was guilty allright of the charges against him, but that there were others just as guilty as he was, and that he did not intend to be made a goat of.

Mr. Blakeley: "Q. What was the conversation you had with Mr. Klein, at that time? A. Do you want me to tell all that occurred from the inception of the conversation until the finish? Q. Yes. A. Mr. Klein was at my office complaining about the annoyance that was caused him and the members of his family by the covering of them, or shadowing rather, of the members of his household by detectives, and wanted me to exercise my power in taking them off, as he said, 'calling them off.' I said so long as they did not assault them or accost them or become a nuisance, we hadn't any powers in the premises, that we couldn't do anything so long as they didn't interfere with their liberty in any way. Then I said: 'Captain, why do you men permit yourselves to get into a squabble like this bank affair, create all the worry and trouble? Does it pay?' 'Well,' he said, 'there are few men like you in councils, director.' He said, 'I am not innocent, but' he said, 'there are a whole lot just as guilty as I am.' 'Well,' I said, 'Captain, if that is the case, you are a darn fool if you become a goat for any of them. I would just stand up and be fair and frank and honest and tell what I knew.' And he said, 'I don't propose to be a goat for any person.' And that was all that occurred."

Cross-examination by Mr. Marron.

"Q. That is the whole conversation? A. On this subject; yes, sir; he did— Q. He called on you for the purpose of having you, if possible, protect him from the constant annoyance of himself and his wife and children, day and night by spies about his house? A. Yes, sir. Q. And dogging his steps around this town every day? A. That was the purpose of his visit."

Mr. Blakeley: "Q. That is what he told you they were doing? A. Yes, sir."

Mr. Marron: "Q. And you have no doubt that is true, director? A. I haven't any doubt, no. Q. You have given the whole conversation as you recall it? A. Yes, sir—pertaining to this subject; yes, sir; that was all that occurred. Q. Did you promise Mr. Klein to see Mr. Weil and have these spies pulled off him or his wife?"

Objected to.

The Court: I think the whole conversation is proper.

"A. I told him I had already done that, because I had been to see Mr. Weil some days previous to that, and had advised him to be as considerate of these people as it was possible under the law, and not to annoy them any more than the conditions warranted. Q. Was that about the time some legal proceedings were commenced? A. No, sir; that was about a week before. Some of the other members had complained about it and I had taken it up."

Mr. Blakeley: Now is that all director?

Mr. Marron: Counsel for defendant now move the court to strike from the record the testimony under the offer made as to the last witness, for the reason that it does not conform to the offer, is not responsive to it, and does not establish the fact proposed in the offer.

The Court: I think it is substantially in conformity or nearly enough so not to have it stricken from the record. The motion is refused.

Exception noted and bill sealed at request of defendant's counsel. [10]

Mr. Marron: The defendant proposes to show by the witness on the stand, who was the chairman of the finance committee, the committee having in charge the resolution naming the six depositories of the city funds, on June 2, and again as members of council on June 8, 1908, that the committee unanimously approved the resolution and unanimously reported it to councils, a committee composed of thirty persons, members of select and common councils of the city of Pittsburg, and that on June 8, 1908, at a meeting of the common branch of councils, of which the witness was a member, the report of the committee on finance in relation to the selection of depositories was read and carried almost unanimously; to be followed by evidence of the witness and the total membership of the finance committee of councils and the total membership of select and common councils of the city of Pittsburg at that time that the defendant, John F. Klein, did not endeavor in any way, corruptly or otherwise, to influence their

votes or their influence as members of councils or this committee, in relation to this ordinance; that they had no knowledge whatever of any money being paid by any one of the six banks named in the ordinance, for the purpose of obtaining votes for the ordinance or the influencing of members of councils; and this for the purpose of rebutting the allegation in the indictment that this defendant solicited and took for himself and others a bribe in the sum of $17,500 for his vote officially and for his influence as a member of councils; which influence would be evidently exercised upon other members of councils in relation to this ordinance; and for the purpose of rebutting the intimations and inferences to be drawn from any of the testimony of the commonwealth's case by the conduct of the defendant or by his alleged declarations to others that he was active in relation to the ordinance, that he admitted, or it is claimed that he admitted receiving money and using it with others for the purpose of securing the passage of this ordinance; and for the purpose of rebutting and making improbable any inference or presumption growing out of the evidence, tending to show that the defendant was active in the interest of this ordinance, but that his activity and his interest was corrupt, because of the payment of money, either by the German National Bank or by any other of the six banks named in this ordinance; to be still further followed by the testimony of the officials of these banks, the banks named in this ordinance, the persons likely to have knowledge of the expenditures of any of the funds of the banks for any purpose, honest or dishonest; that no funds of these banks were offered, paid or given to anybody for the vote or official influence of any member of councils of the city of Pittsburg in relation to the resolution or ordinance naming the city depositories; and in connection with this same offer, defendant proposes to prove by his testimony and the testimony of the person named in the commonwealth's case, namely, Bolger, that at no time or at the times designated in evidence, he did not either solicit, receive or take from the cashier, Vilsack, or the president, Ramsey, or any official claiming to represent the German National Bank, any money for the purpose of

influencing the official actions of councils or his own vote in relation to the selection of the German National Bank as a city depository.

Mr. Blakeley: I object to this offer as a whole. There may be some matters in it that would be admissible, but there are others that would not.

The Court: We cannot rule the offer as a whole.

J. C. Wasson, recalled as follows:

Direct examination (resumed).

Mr. Marron: The defendant makes the offer as a whole and asks for a ruling on it as a whole.

The Court: The court declines to rule the offer as a whole, but will sustain the objection to the extent that it refers to the testimony of the different members of councils and the finance committee, and also the officers of the five banks named in the resolution excluding the German National Bank.

To which ruling of the court counsel for defendant request an exception. Allowed. [11]

J. C. Wasson, a witness for appellant, was asked:

"Q. Well, whether he was there or voted, I will ask you whether John Klein ever spoke to you upon the subject of your influence or vote in relation to this ordinance and this resolution, and either proposed the payment of money to you or the distribution of money to you or the offer of money to you, or gave you any money, or agreed to give you any money, for himself or any other person or bank in relation to that ordinance, or any other thing of value?"

Mr. Blakeley: Objected to as incompetent and irrelevant.

Objection sustained. Exception. [12]

Mr. Marron: Defendant's counsel, in view of the cross-examination of John F. Klein, as to whether or not he was active in securing votes for the depository ordinances, particularly for the selection of the German National Bank as a depository, and whether or not he did not strive to influence the votes of other members of council, and whether or not he was not active among the members of the finance committee, of which the witness at that time was chairman, and whether or not he did not interest himself and use his influence on that

committee for the depository ordinance, and particularly the selection of the German National Bank, the defendant now proposes to show by the testimony of the witness, to be followed by the testimony of all the members of the finance committee at that time, that the defendant, John F. Klein, did not exert himself or was not active, and did not use his influence with the committee for the purpose of having the German National Bank selected as a place of depository of the city of Pittsburg for its funds, at and before the action of the committee upon this resolution.

Objected to as incompetent and irrelevant.

Mr. Marron: I will ask again that the district attorney say and put on record whether or not, in view of his cross-examination of John F. Klein, the defendant, and also his objection to the offer now made, he discloses any purpose to show or will argue to this jury, that the defendant was active in the interest of that ordinance while it was pending in the finance committee.

Mr. Blakeley: The district attorney will argue the case as he observes and considers the evidence to be.

Objection sustained.  Exception. [13]

"Q. I want to ask you whether, on June 26, 1908, he offered you a bill of $5,000 in payment of a small bill which he wanted to pay your company?"

Objected to for the reason that in the question asked on cross-examination of the defendant, no date was fixed, and there can be no contradiction of any statement made by the witness, unless the time, place and situation is designated. And objected to as incompetent.

Objection overruled.  Exception. [14]

Mr. Marron: The defendant in contradiction of the witness, Frey, alleging that the defendant showed him six $5,000 bills in his inside coat pocket, now proposes to prove in surrebuttal that the money that the witness had in his pocket on that day was money to be used by him for the purpose of payroll, and was less than $2,000, in corroboration of the testimony of the witness.

Mr. Blakeley: Objected to as not surrebuttal.

Objection sustained. Exception. [15]

Defendant presented these points:

That the act of assembly general of March 31, 1860, in its forty-ninth section provides: "That in any criminal proceeding for bribery the accused shall not be convicted on the testimony of an accomplice unless the same is corroborated by other evidence or the circumstance of the case. *Answer:* Refused. [16]

2. That the accusing witnesses, A. A. Vilsack and William Ramsey, being admittedly accomplices in the crime to which they testify, before the defendant can be convicted of the offenses alleged in the indictment, their testimony should be corroborated by some fact independent of their testimony, which taken by itself, leads to the inference not only that the crime alleged in the indictment has been committed, but that the defendant, John F. Klein, is implicated in it. *Answer:* Refused because the point asks to say a conviction cannot be had unless the testimony of Vilsack and Ramsey is corroborated. [7]

3. The testimony of the witnesses, A. A. Vilsack and William Ramsey, before it is taken as true by the jury, should be corroborated by unimpeachable testimony in some material part which affects the defendant, John F. Klein, and connects him with the crime alleged in the indictment. *Answer:* Refused for the reason given in our answer to the preceding point. [18]

4. While the evidence of accomplices has always been admitted, the practice of the courts has now been settled that no conviction should be had on uncorroborated testimony of the accomplices, and the testimony corroborated by unimpeachable testimony in some material part which affects the defendant, John F. Klein, and connects him with the crime. *Answer:* Refused. [19]

5. A conviction on the testimony of the admitted accomplices, Ramsey and Vilsack, uncorroborated, would be very unsafe and dangerous, and the jury must inquire whether the commonwealth had satisfied them beyond a doubt of the truth of the accomplices' testimony, and the jury must be satisfied

beyond a reasonable doubt that the accomplices have been corroborated upon material parts of their testimony before they can safely give credit to the whole statement of the accomplices.  *Answer:* Refused. [20]

Verdict of guilty upon which judgment of sentence was passed.  Defendant appealed.

*Errors assigned* were (1–15) rulings on evidence, quoting the bill of exceptions; (16–20) above instructions, quoting them.

*John Marron,* of *Marron & McGirr,* with him *John S. Robb, Jr.,* for appellant.

*Warren I. Seymour,* with him *W. A. Blakeley,* for appellee.

OPINION BY RICE, P. J., March 3, 1910:

The first four counts of the indictment under which the appellant was convicted charged, in the words of sec. 8 of the Act of May 23, 1874, P. L. 230, different phases of bribery therein defined, and the other two counts charged bribery at common law.  One of the important questions discussed on this appeal arises upon the refusal of the court to charge that the proviso in sec. 49 of the Act of March 31, 1860, P. L. 382, was applicable to the case.  We are of opinion that the point was properly refused.  The first clause of sec. 48 of the act of 1860 declares it to be a misdemeanor to give or offer to give a bribe "in order to obtain or influence the vote, opinion, verdict, award, judgment, decree or behavior of any member of the general assembly, or any officer of this commonwealth, judge, juror, justice, referee or arbitrator, in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them."  The second clause of the same section declares it a misdemeanor on the part of "the member of assembly, officer" (evidently meaning the person described in the preceding clause as any officer of the commonwealth) "magistrate, juror, justice, referee or arbitrator, who shall accept or receive,

or agree to accept or receive such bribe." Section 49 declares that no witness shall be excused from testifying in any criminal proceeding, or in any investigation or inquiry before either house of the general assembly, or any committee thereof, "touching his knowledge of the aforesaid crimes," (evidently meaning the crimes specifically defined in the preceding section), "under any pretense or allegation whatsoever; but the evidence so given, or the facts divulged by him, shall not be used against him in any prosecution under this act." Then follows in the same section this proviso: "Provided, that the accused shall not be convicted on the testimony of an accomplice unless the same be corroborated by other evidence or the circumstances of the case." The several phases of bribery defined in sec. 8 of the act of 1874 are of the same general nature as the misdemeanor defined in the second clause of sec. 48 of the act of 1860; but this section of the act of 1874 relates exclusively and specifically to acts committed by members of city councils, whereas persons holding that corporate office are not mentioned in secs. 48 or 49 of the act of 1860, and are not included in them, unless the words "any officer of the commonwealth" be construed to have that effect. Moreover, the description of the offense or offenses included in sec. 8 of the act of 1874 is not identical in phraseology, nor in all particulars in substance, with that employed in the act of 1860, and the punishment is not the same. Again, sec. 8 of the act of 1874 contains no such proviso as that above quoted from the act of 1860, and the section concludes with the provision, which does not appear in secs. 48 or 49 of the act of 1860, that the person convicted, "shall be forever incapable of holding any place of profit or trust in this commonwealth." The phraseology of the proviso in sec. 49 of the act of 1860, taken in connection with the main part of the section, clearly indicates that the words "the accused" relate to one indicted under sec. 48, and there is no indication in the act of 1874 of an intention to bring forward and make applicable to prosecutions brought under it the principle of that proviso. From this review, we think it must be apparent that the argument which sustained the construction, adopted in Com. v. Bell, 145 Pa. 374, whereby the gen-

eral words "offense of bribery" in sec. 32, art. III, of the constitution were held to include all bribery, whether bribery at common law, or under the constitution itself or any kind of statutory bribery, are not available to sustain a construction of the words "the accused" in the proviso in sec. 49 of the act of 1860, which would include every person indicted for bribery, whether at common law or under subsequent statutes.

The next question to be considered arises upon the assignments specifying error in the refusal of the defendant's second, third, fourth and fifth points. Before discussing these assignments it should be noticed that the learned trial judge did not overlook the subject to which those points relate, but in his general charge called the jury's attention to the caution with which the testimony of an accomplice should be accepted and acted upon by them in the following terms: "Where the case rests upon the testimony of an accomplice, it is always best for a jury to receive the testimony of the accomplice with caution. If you believe the testimony of the accomplice, if you are satisfied of the absolute truthfulness of the testimony of an accomplice, you may convict upon that testimony without any other; but it is usually best to have the testimony of an accomplice corroborated in material facts, some parts, some material parts, that indicate its truthfulness. It is not essential that the entire testimony of the accomplice be corroborated, but if it be corroborated in material facts to such an extent as to satisfy you of its truthfulness, then you can convict, or you can convict if it is not corroborated, if you believe the testimony to be absolutely true. But I say that the usual rule is to receive an accomplice's testimony with caution." This portion of the charge is not assigned for error upon the ground of inadequacy or any other ground, and we do not allude to it for the purpose of discussing it, or of showing that it is the substantial equivalent of the instructions prayed for in the points, for it is not, but only to show that the subject was not overlooked. No common law rule forbids a conviction upon the uncorroborated testimony of an accomplice, if his evidence satisfies the jury of the guilt of the accused beyond a reasonable doubt: Carroll v. Com., 84 Pa. 107; Hester v. Com.,

85 Pa. 139; Kilrow v. Com., 89 Pa. 480; Watson v. Com., 95
Pa. 418; Ettinger v. Com., 98 Pa. 338; Cox. v. Com., 125 Pa.
94; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Sayars, 21
Pa. Superior Ct. 75.   In Cox v. Com., supra, the trial judge
charged that unless the jury found the testimony of the accom-
plice to be corroborated in a material part it would be their
duty to acquit.   Speaking of this instruction and of the gen-
eral subject the Supreme Court by PAXSON, C. J., said: "This,
as before remarked, was more favorable to the defendant than
he was entitled to, and it is now referred to, not as essential to
the determination of the case, but merely to prevent mis-
apprehension in the future.   The learned judge below did his
full duty, under all the authorities, in cautioning the jury as to
the danger of convicting upon the uncorroborated evidence of
an accomplice.   He was not bound to instruct them to acquit
in the absence of corroboration.   A jury may believe an un-
corroborated accomplice, and if his testimony produces in their
minds a conviction of the defendant's guilt, beyond a reason-
able doubt, they may convict.   If the testimony of the accom-
plice, his manner of testifying, his appearance upon the wit-
ness stand, impress a jury with the truth of his statement,
there is no inflexible rule of law which prevents a conviction.
In such case it is for the trial judge who also heard the witness,
noticed his manner and appearance upon the stand, and who
can judge equally with the jury as to his credibility, to say
whether he is satisfied with the verdict.   If both the jury and
the court are satisfied that he has told the truth, there is no
reason why the verdict should not stand.   If we lay down an
inflexible rule in regard to corroboration, there may be in-
stances when criminals will escape although both jury and
court are satisfied beyond a reasonable doubt of their guilt."
The learned counsel for the defendant while conceding the gen-
eral proposition above stated, vigorously insist that their
client had a right to the unqualified affirmance of the principles
of evidence set out in his points and that this was denied him.
They argue that the defendant's second point was drawn in the
words of Watson v. Com., 95 Pa. 418, his third point in the
words of Hester v. Com., 85 Pa. 139, and Carroll v. Com., 84

Pa. 107, and his fourth point in the words of Donnelly v. Com., 6 W. N. C. 104, and therefore that the trial judge in refusing these points virtually overruled decisions of the Supreme Court that were binding upon him. It is to be observed, however, that in all of these decisions it was distinctly declared or clearly implied that a jury may convict on the uncorroborated testimony of an accomplice and that these points were so worded as to leave out of view, indeed to obscure this well-settled principle. An unqualified affirmance of the points, without any other instruction on the subject, would have tended to mislead the jury to the prejudice of the commonwealth quite as certainly as a bare instruction without more, that the jury could convict on the uncorroborated testimony of an accomplice, would have been inadequate for the protection of the defendant's rights. It is to be observed further in regard to Watson v. Com., that the report of the case fails to show that any assignment raised the question of the correctness or the adequacy of the charge to the jury upon the weight to be given to the uncorroborated testimony of an accomplice. The language of the opinion in that case, to which allusion is made in the present argument, seems to relate to exceptions to the rulings upon evidence, and to the essentials necessary to be established in order to entitle evidence to be treated as corroborative. And with regard to the other three cases it is to be remarked that the overruling of the defendant's assignments to the instructions given to the juries in those cases does not imply a ruling that the same instructions must be given in every other case where the testimony of an accomplice appears, if the defendant request it. While the generally accepted doctrine is that the court should instruct the jury that the testimony of an accomplice should be received and acted upon by them with caution, and while it is said in some of the text-books to be common practice for judges in their discretion to advise them not to convict where it is wholly uncorroborated, yet no set form of expression in which the jury must be instructed upon this subject has been prescribed: Com. v. Craig, 19 Pa. Superior Ct. 81. In judging of the adequacy of the instructions some regard must be had, not only to the fact that the testimony is given by an

accomplice but to every other matter appearing in the case which may properly be taken into consideration by judge and jury in determining whether the testimony of a witness may be safely relied on or not, and particularly the superior opportunity which the trial judge has to observe the appearance of the accomplice witness on the witness stand and his manner of testifying. To say that in every case, no matter how candid and straightforward the accomplice witness may be on the witness stand and how convincing may be his testimony, the judge must advise or admonish in terms which would be naturally construed by the jury as a binding direction upon a point of law is not warranted by the later decisions; and if we cannot say that, we cannot say that there was error in refusing to charge upon the subject in the language of these points.

The indictment alleged, inter alia, that the defendant, a councilman of the city of Pittsburg, solicited and received a bribe of $17,500 for his vote and influence in support of an ordinance or ordinances naming the German National Bank a city depository, and that he gave his vote and influence for that bribe. Proof of the pendency of such ordinance would certainly have been competent, and we cannot see that it was wholly irrelevant to show when and in what way or manner it was pending. The effect of the ruling complained of in the first assignment of error was simply to permit the commonwealth to show that it came up to be voted on on the date when it first passed, and again when it was passed over the mayor's veto. The veto message was not admitted, but later in the trial the offer of it by the district attorney was distinctly and unequivocally rejected. Under the court's ruling the fact of the veto could not be used for any illegitimate purpose. As it was subsequently testified by Ramsey, one of the givers of the bribe, that the defendant declared councils would pass the ordinance over the veto, and as the defendant voted for the ordinance on both occasions, we are convinced that no error was committed in permitting the commonwealth to prove the passage of the ordinance over the mayor's veto.

The second and third assignments of error may be considered together. W. W. Ramsey was vice president and A.

A. Vilsack was cashier of the German National Bank, and were called and testified under compulsion as witnesses for the commonwealth. Ramsey testified to three interviews with the defendant, who was usually accompanied by Bolger in his visits to the bank, in which the subject of making the German National Bank one of the city depositories was discussed. After having stated that Bolger and Vilsack were present, and being asked by the district attorney to narrate the conversation at the last interview, he said: "Well, that conversation related to paying him $2,500—or paying him $2,500 additional for obtaining the city deposits." Again, speaking of the same interview he testified: "I went over this thing with him about how he could do it and I wanted to know why this additional money was demanded." He further testified, without objection, that a few days before this interview and the demand of $2,500, $15,000 were taken from the bank vault by Vilsack pursuant to an arrangement between him and Vilsack and by the latter handed to Bolger, but that he did not see the defendant at the bank at that time. The words "additional money" were not put into the witness's mouth, but were first used by him without any suggestion from the district attorney and before the latter used them in his questions. Even in the absence of explanation of his meaning, the natural and irresistible inference which the jury would have drawn from his testimony was that in speaking of the $2,500 as additional money he meant that it was in addition to the $15,000 previously paid. Therefore we cannot see that any possible harm could have come to the defendant from admitting the following question and answer referred to in these assignments: "Q. What did you refer to as additional money? A. Well, we had already paid $15,000 out, and I referred to the $2,500 as why that was to be paid additionally." But even if his reference to the $15,000 payment was incompetent, unless followed by evidence that the defendant was connected with it, abundant evidence to that effect was subsequently given by Vilsack. There are many cases in which the admission of testimony, which was incompetent at the time of its admission but which was rendered competent at a later stage of the trial, has been

held not to be cause for reversal: Laird v. Campbell, 100 Pa.
159; Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619;
Com. v. Mellet, 27 Pa. Superior Ct. 41. This is a proper case
for applying the principle.

The fourth, fifth and sixth assignments raise the same ques-
tion. Vilsack was under indictment for giving the bribe which
the defendant was charged with accepting. He was called as a
witness, but did not testify until after his claim of privilege
not to be required to give evidence that would criminate him
had been overruled by the court. No restriction was put upon
his cross-examination for the purpose of ascertaining whether
any inducement or promise or agreement, direct or indirect, had
been held out to him or made. He could scarcely declare his
expectation as to pleading to the indictment against him with-
out declaring his intention. When pressed to answer the ques-
tion, "Do you expect to be tried or to plead?" he answered,
"It is all up to my attorney, Mr. Marron; I will consult him
about that." The fair import of his answer was that he had
counsel whom he would consult, and by whose advice he
would be guided. Under the circumstances, this was as far as
he ought to have been required to go in revealing what was his
intention or expectation.

The ruling complained of in the seventh assignment of error
needs no discussion. It shows on its face that the memoran-
dum made by the witness immediately after his interviews
with the defendant was one which the witness could properly
be permitted to refer to upon the witness stand to refresh his
memory as to what was said at those interviews, and that the
use which the witness was permitted to make of it was con-
fined strictly to that purpose. The court distinctly said he
could not use it for the purpose of reading to the jury what he
had written.

It is sufficient for purpose of discussion of the eighth and
ninth assignments to say, that the witness, Wilson, testified
in chief to the defendant's admissions to him to the effect that
Ramsey had paid him money in connection with the bank
matter, and the defendant's admissions as to the manner of
payment. The fact was brought out on his cross-examination

that Wilson was employed with others by the Voters' League as a detective to investigate the matter of the selection by councils of banks to be depositories of city funds. He was fully and vigorously cross-examined as to his previous occupation, as to work of similar kind he had been engaged in in Scranton, as to his connection with prosecutions for violation of liquor laws, as to the persons with whom he had consulted and under whom he had acted in the bank investigation, and as to his activity in that matter. Without going into greater detail it is enough to say that his interest in that matter generally, as well as in this particular prosecution, so far as showing interest to affect his credibility was concerned, could not have been made more clear if the court had permitted the question whether he had detectives following the defendant during the three or four weeks which preceded the trial. The rejection of this question was not prejudicial error. Nor was there reversible error in rejecting the offer to show on cross-examination that he claimed to have paid the defendant $500 for the purpose of influencing his conduct as a member of council. The fact that he had so claimed was not relevant to this inquiry or to anything to which he had testified in chief. The range of cross-examination as to collateral and irrelevant matters for the purpose of affecting the credibility of a witness rests largely in the discretion of a trial judge. There is no such manifest error in either of these rulings as to justify us in reversing the judgment.

In support of an offer to prove by E. G. Lang, the director of the department of public safety, "that in a conversation had with the defendant on or about one of the dates mentioned, the defendant said that he was guilty all right of the charges against him, but that there were others just as guilty as he was, and that he did not intend to be made a goat of," the witness testified, inter alia, as follows: "Then I said, 'Captain, why do you men permit yourselves to get into a squabble like this bank affair, create all the worry and trouble? Does it pay?' 'Well,' he said, 'there are very few men like you in Council, Director.' He said, 'I am not innocent, but,' he said, 'there are a whole lot just as guilty as I am.' 'Well,' I said, 'Captain,

if that is the case, you are a darn fool if you become a goat for any of them. I would just stand up and be fair and frank and honest, and tell what I knew.' And he said, 'I don't propose to be a goat for any person.'" It cannot be claimed that this was not competent testimony. It was received without objection, and we agree with the learned trial judge that it so closely corresponds to the offer that the defendant's motion to strike it from the record ought not to have prevailed.

The offers to prove that the defendant did not solicit any member of council to vote in favor of the bank ordinances, to be followed by the testimony of the officers of the other banks named in the ordinances that these other banks had not paid any money for their selection as city depositories and that no money was offered by the defendant to the chairman of the finance committee or others in relation to the ordinances were properly rejected as irrelevant under the state of the evidence when the commonwealth closed its case. At that time the charge against the defendant as disclosed by the evidence was the acceptance of a bribe of $17,500 for his vote and influence in favor of the selection of the German National Bank as one of the depositories. To have gone into an investigation as to whether the other banks named as depositories also paid money for that purpose would have opened up a very wide field, and we think the court was right in holding that that was an irrelevant matter. Though the indictment charged that the defendant had solicited and accepted the bribe for himself and for others the defendant was not called upon to meet the portion of the charge relating to others in the absence of testimony upon the part of the commonwealth sustaining it. Nor would the fact that the defendant did not solicit nor pay others to vote for the ordinances tend to show that he did not accept the bribe.

The specific objection urged against the question quoted in the fourteenth assignment was that in the question asked on cross-examination of defendant no date was fixed, and therefore the defendant's answer could not be contradicted. The reason assigned in support of this objection seems not to be well founded, for in the cross-examination of the defendant we

find this question and answer: "Q. Do you remember on June 26, 1908, of throwing a $5,000 bill at him in payment of a little account that you owed him? A. No, sir; I remember throwing a $500 bill, which I later deposited." Sufficient ground was laid for contradicting testimony.

The testimony of the commonwealth was to the effect that the $2,500 were paid on the evening or the evening before the passage of the ordinance, which was July 9, 1908, and that the $15,000 were paid a few days before. In answer to a question put to him on cross-examination, the defendant denied most emphatically that in July, 1908, he showed to one E. Frey six $5,000 bills, and he asserted that he did not have that much money at that time or at any other time on his person. He further testified that he carried large sums of money during June and July which he derived from his boating business. Frey testified in rebuttal that the defendant came to his place of business and thrusting what he thought at first was a green piece of paper into his hand, said: "That is the way I get it;" that he, Frey, unfolded it, looked at it very sharply and discovered that it was a new $5,000 bill; that he never saw one before, and wet his fingers to make sure it was not a counterfeit; that he made a remark of surprise to a friend standing near, whereupon the defendant said: "That is nothing," and opened his coat and showed him five other $5,000 bills and other bills the denomination of which he did not know. The witness did not undertake to say what the amount of these bills of other denominations was. In surrebuttal, the defendant was permitted to testify that no such transaction as that related by Frey ever took place; that he did not have in his possession nor hand to Frey a $5,000 bill; that the bill he handed him was in payment for some straps and was a $500 bill, not green but yellow. Being asked by his counsel whether he had a quantity of bills of other denominations at the time he showed Frey the $500 bill he answered: "Yes, sir; I had a pay roll for the boats Saturday morning, I think it was." Then came the offer to show that it was less than $2,000, the rejection of which offer is the subject of the fifteenth assignment. It will be seen from this tedious recital that the offered

testimony would not have rebutted anything that Frey had testified to as to the defendant's possession of bills of other denominations than $5,000. That he had a quantity of bills of other denominations was admitted by Frey. The question of fact squarely raised by Frey's testimony was, whether the defendant had in his possession and showed to Frey $30,000 in bills of the denomination of $5,000 each. Upon that question, as well as to the source from which he derived the bills that he admittedly had, the defendant was permitted to testify fully. The jury would not have been aided in deciding the irreconcilable conflict between Frey and the defendant by the admission of the rejected offer.

We have now discussed in more or less detail all of the assignments, and find no reversible error in any of the rulings complained of. Upon a comprehensive review of the case as a whole we conclude that the defendant had a fair trial according to the forms and rules of law, and that the verdict of the jury is abundantly sustained by the evidence which they manifestly credited.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Allegheny county with direction that the judgment be fully carried into effect, and to that end it is ordered that the defendant forthwith appear in that court and that he be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.