Commonwealth *v.* Spadaro, Appellant.

Argued October 25, 1928.

Before Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*B. D. Oliensis*, for appellant.

*Vincent A. Carroll*, Assistant District Attorney, and with him *John Monaghan*, District Attorney, for appellee.

OPINION BY LINN, J., November 14, 1928:

Appellant was convicted on two indictments, one charging entry with intent to steal, larceny, and receiving stolen goods; the other charging conspiracy to enter and steal. The first assignment of error is to the refusal to permit a witness called by the defendant to answer the following question: "Do you know how he [appellant] was arrested?" Later when appellant was on the stand he explained that he was not arrested, until, having heard that he was wanted, he went to the City Hall and surrendered himself; he had not been accused of flight; the assignment does not merit discussion.

Three assignments of error are based on three extracts from the charge, which, read together, constitute the instruction concerning defendant's alibi. He also complains of the instruction on reasonable doubt, and that the conviction was not warranted because based (in the words of appellant's brief) on the "testimony of two perjured accomplices utterly uncorroborated, though clearly susceptible of corroboration if true."

The verdict establishes that appellant and three accomplices during the night of December 31, 1927, entered the store of the Public Loan Company in

Philadelphia and stole property said to be worth $75,-000. Two accomplices (the third is still at large) were tried together, convicted and sentenced several months before appellant was tried; they then denied knowledge of the crime. They were brought from the penitentiary, and testified in appellant's trial that he committed the robbery with them. Appellant testified that one of them had been in his employ in the "bootlegger business" before the robbery. He also testified that on the night of December 31 he was at his home with his wife at 9:30 and "went out—me and Jimmie, a friend of mine [who "used to be in the bootlegger business, once"], I stood with them until about 4 o'clock in the morning. We went home and we played the radio then and then went to sleep." In cross-examination he said that "we went up Market Street after midnight—about that—1 o'clock, and played the radio until about 4 o'clock ......" He testified that he was "now in the undertaker business" but had been in the "bootlegger business until this summer." He was contradicted by the Chief of County Detectives, who testified that in an interview with him after his arrest, he informed the detective that on December 31 he had been soliciting orders for liquor, that he left his house about 11:30 p. m. and went to the Dunbar Theatre and remained there until 2:30 a. m. When reminded that January 1st was Sunday and that the theatre could not be open, he insisted, so the witness stated, that he went to the theatre and saw the New Year's parade, although the parade took place on Monday, January 2nd, and not on Sunday, January 1st.

The court instructed the jury concerning the consideration to be given to the testimony of accomplices, stating that while the jury might find a verdict on their evidence alone, it should only be done after the jury had "carefully scrutinized their testimony";

that "it must be scrutinized with care on your part, bearing in mind that they are accomplices, and they are criminals, who by their own word took hand in the robbery." Appellant now complains that the evidence of the two convicts should not have been submitted to the jury without corroboration. The complaint is without merit; it is settled in this Commonwealth that (excepting the bribery cases within the proviso to section 49 of the Act of March 31, 1860, P. L. 382) corroboration is not essential: Cox v. Com., 125 Pa. 94, 103; Com. v. Klein, 42 Pa. Superior Ct. 66, 82. It is necessary however that the jury be cautioned to scrutinize such testimony with care before accepting it. In Com. v. Klein, President Judge RICE said: "While the generally accepted doctrine is that the court should instruct the jury that the testimony of an accomplice should be received and acted upon by them with caution, and while it is said in some of the text-books to be common practice for judges in their discretion to advise them not to convict where it is wholly uncorroborated, yet no set form of expression in which the jury must be instructed upon this subject has been prescribed: Com. v. Craig, 19 Pa. Superior Ct. 81. In judging the adequacy of the instructions some regard must be had, not only to the fact that the testimony is given by an accomplice but to every other matter appearing in the case which may properly be taken into consideration by judge and jury in determining whether the testimony of a witness may be safely relied on or not, and particularly the superior opportunity which the trial judge has to observe the appearance of the accomplice witness on the witness stand and his manner of testifying. To say that in every case, no matter how candid and straightforward the accomplice witness may be on the witness stand and how convincing may be his testimony, the judge must advise or admonish in

terms which would be naturally construed by the jury as a binding direction upon a point of law is not warranted by the later decisions ......"

Coming now to the alibi, it may be said at once that in his charge the judge used an inappropriate expression; we are convinced, however that in the circumstances, the expression was harmless and not the subject of reversal. It may be recalled "that the object of a trial before a jury is to ascertain, with as much certainty as can be attained in a human tribunal, the guilt or innocence of one charged with crime. When as the result of such a trial a verdict has been rendered against the prisoner, it ought not to be set aside by the trial judge, or by proceedings in a court of error, unless in some essential particular the trial has been erroneous. No merely technical or formal objection not affecting the result should be listened to." Com. v. Mudgett, 174 Pa. 211, 262. The expression complained of is: "It [the alibi] is an extraordinary defense, because it puts the Commonwealth to considerable disadvantage immediately, and because it is an extraordinary defense the testimony in support of it must be such as will lead you to the belief that he was not there in fact. Was he there, or was he not there? If you believe these two witnesses—these men who say they were his accomplices, and working practically under his direction, then he was there. If he was not there he ought to be acquitted. He is entitled to a reasonable doubt ......" [then follow instructions on that subject]. Now, an extraordinary alibi may easily be imagined, though there seems to be nothing extraordinary about the one offered by this appellant, unless it be found in the facts that he and his witnesses differ in their accounts of it and that his statement to the County Detective differs remarkably from his evidence in the case. But when we take the charge as a whole and

consider it in the light of all the evidence, we are bound to conclude that appellant was not injured by the extract complained of. The evidence of appellant's exact whereabouts in Philadelphia during the time in which the jury may have found that the robbery took place in the same city is not as clear as it might be; and in connection with it the jury of course had to consider the contradiction in his account of his whereabouts given to the County Detective. "When a defense rests on proof of an alibi, it must cover the time when the offense is shown to have been committed, so as to preclude the possibility of the prisoner's presence at the place of the murder," or other crime committed: Briceland v. Com., 74 Pa. 463, 469. "When considered as a distinct element of the defense, the burden is upon the accused who asserts the fact upon which the defense is based to establish it by fairly preponderating evidence. This defense [the alibi] does not, however, raise any collateral issue which is to be distinctly and separately determined. It is as much a traverse of the crime as any other defense, and proof establishing it, though not clear, may, nevertheless, with other facts in the case, raise that reasonable doubt which must result in an acquittal: Turner v. Com., 86 Pa. 54; Watson v. Com., 95 Pa. 418; Briceland v. Com., 74 Pa. 463; Fife et al. v. Com., 29 Pa. 429." Com. v. Gutshall, 22 Pa. Superior Ct. 269, 272. It cannot be said that the charge in this case relieved the Commonwealth from proof beyond a reasonable doubt that appellant committed the crime.

A line or two are selected from the charge as basis for the complaint that the jury could entertain no reasonable doubt that did not arise from all the evidence, thus depriving appellant (so the argument goes) of the benefit of a reasonable doubt arising from any part of the evidence. Certainly a reasonable doubt

may arise from part of the evidence (Com. v. Green, 292 Pa. 579) and we do not understand that the charge could mislead the jury in that respect. The part of the sentence particularly complained of is "...... but a real doubt which causes you to hesitate after considering all of the testimony." In the beginning of the charge, the jury was instructed that defendant was presumed to be innocent, and that the presumption remained until the Commonwealth removed it by evidence convincing beyond a reasonable doubt; later, the instruction was repeated with a definition that it must be a doubt arising from the evidence; still later came the expression assigned for error. Taking it as a whole we do not consider it subject to the refinements suggested by appellant.

Judgment affirmed.