## HENRY M. COX v. COMMONWEALTH.

ERROR TO THE COURT OF QUARTER SESSIONS OF NORTH-AMPTON COUNTY.

Argued March 11, 1889—Decided March 25, 1889.
[To be reported.]

(a) On the trial of an indictment charging the procurement of an abortion, Evans, a co-defendant, testified that he had made an arrangement with the defendant on trial by which the latter was to commit the offence: there was other testimony tending to establish the corpus delicti and to implicate the accused therein:

1. In such case, as the corpus delicti was proven to the satisfaction of the jury by independent testimony properly submitted, and as the accomplice did not testify to the actual commission of the offence, the defendant was not and could not have been convicted upon the testimony of the accomplice alone.

2. Wherefore, a point for the defendant, that "corroborating evidence must not only be as to the commission of the offence by somebody, but must also be a corroboration of the fact that defendant on trial committed it," was not supported by the facts in evidence.

3. An instruction to the jury, as follows: "I leave the question to you as to corroboration, simply saying . . . . that unless the testimony of

Statement of Facts.

Evans is corroborated in a material part, it would be your duty to return a verdict in favor of the defendant," was more favorable to the defendant than he was entitled to.

4. The trial judge did his full duty, in cautioning the jury as to the danger of convicting upon the uncorroborated testimony of an accomplice, and he was not bound to instruct them to acquit in the absence of corroboration, as there is no rule of law which requires such instruction.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 85 July Term 1888, Sup. Ct.; court below, No. . . . . . . . . Term 1888, Q. S.

On April 11, 1888, the grand jury returned as a true bill an indictment charging Dr. Henry M. Cox, George B. Evans and three others with having procured an abortion upon the person of Jennie R. Osborne.

On April 12, 1888, a severance having been ordered, Dr. H. M. Cox was called to the bar and pleaded not guilty, when issue was joined. The testimony of the commonwealth established that Jennie R. Osborne, a young unmarried woman, had died on February 16, 1888, at a hotel in Easton, from an abortion committed, as was claimed, on February 11th. The testimony implicating the defendant on trial was circumstantial only, and the chief witness for the commonwealth was George E. Evans, a co-defendant who came upon the stand to testify under a promise of immunity. This witness was a salesman for a New York house, but resided in Jersey City. He visited Easton in a business way about every two weeks. Among his customers in other places was a merchant in Connecticut, in whose behalf he had arranged with the defendant and the proprietor of the hotel at Easton, that the young woman should be brought to the hotel to have the operation performed. According to the witness's testimony he had met the defendant at the hotel at Easton on January 16th, and arranged with him then to perform the operation and to procure a nurse; and he had met the defendant a second time at the hotel on January 30th, when the young woman was brought there. This witness did not further implicate the defendant, who, as a witness in his own behalf, denied his guilt and called a number of patients whom he had visited at different hours on January 16th,

some of whom had paid their bills, producing also the railroad time tables, to show that it was impossible for him to have been at Easton on that day. The defendant called also a witness, the holder of a lease, with the subscribing witnesses to it, executed at the defendant's house, seventeen miles from Easton, at the time the commonwealth's witness testified he was with the defendant at Easton, on January 30th. It was shown, however, as other evidence implicating the defendant, that the defendant had admitted at the inquest that he had procured the nurse to attend Miss Osborne at Easton, and that on February 11th, the day the operation was alleged to have been performed, the defendant was in Easton for two hours. The defendant, however, called witnesses who accounted for him during all that time.

The court, SCHUYLER, P. J., so far as relating to the questions raised in this case, charged the jury as follows :

In support of this indictment, and for the purpose of substantiating the charge laid against this defendant, the commonwealth has produced as a witness a man by the name of George B. Evans, who is a confessed accomplice to the death of this young girl, and, being such, when he takes the witness stand he occupies a position different from that of any other witness allowed to testify in the cause. You have heard the counsel upon both sides discuss the law, not only to the court, but to the jury, bearing upon the testimony of an accomplice. There is probably not a very great difference of opinion between the counsel as to the effect of the testimony of such a witness. But, in order that you may understand the law as I believe it to be, I will read to you what I have put down here more in the language which has been approved by the Supreme Court, of another judge, than in my own :

" An accomplice occupies a position of disrepute, and yet the law makes him a competent witness as a matter of necessity, for otherwise many guilty persons would escape the just penalty of their crimes, since oftentimes no other sufficient evidence to insure their proper conviction could be obtained. But from the very character of such witnesses the law and the courts look with caution upon their testimony. Yet, being competent to testify, their credibility is entirely with the jury,

and is to be judged of as that of any other witness, taking into account his disreputable character and position; and, while the jury would be warranted in finding any fact in the cause upon his unsupported testimony, if fully credited, yet we must say to you that it would be very unsafe and dangerous for the jury so to do."

Is then the evidence of Evans corroborated by the other uncontradicted testimony in the cause? It is not necessary that an accomplice should be corroborated in every material part of his testimony, for if this were required, a conviction could be had without his testimony at all. But before a conviction should be had on his evidence in any particular, he should be so corroborated in other material parts of his testimony, by uncontradicted evidence, as to impress the jury beyond a reasonable doubt with the truthfulness of his entire story. When this is the case the law permits the jury to base a conviction upon such testimony. Taking then all the evidence of the commonwealth, which it is claimed corroborates the witness Evans, and all the evidence on the part of the defendant which is claimed to contradict and impeach him, are you satisfied beyond a reasonable doubt of the truthfulness of Evans' statement.

The commonwealth, accepting the necessity resting upon them to corroborate the testimony of the witness Evans, claim that they have done so; and the learned district attorney has mentioned a number of particulars in the evidence outside of the testimony of Evans, which he claims corroborates Evans so as to make him stand as a credible witness before you. In the first place, the district attorney refers to the letter that was written by Evans to Miss Osborne; he further relies upon the fact, testified to and admitted by the defendant, that he sent for a nurse for Miss Osborne. The district attorney relies further, as corroborating the testimony of Evans, upon the fact, which is also admitted, that on the 11th of February last the defendant was in the city of Easton. Another fact, about which I presume you will have but little difficulty, relied upon by the commonwealth as corroborating the witness Evans, is that which grows out of the testimony of Dr. Field in reference to the consultation that he had with the defendant. There may be other matters that the district attorney relies

Charge of Court below.

upon as corroborating the testimony of Evans. If so, you will remember them, but these are all the facts that occur to me now that have been offered in that direction. [In weighing these facts and assigning to them their proper position as a part of the evidence in this case, you will inquire whether either or all of them do in fact corroborate the testimony of Evans in any material particular.][2]

On the part of the defendant it is claimed that the witness has not been corroborated in a single particular. It is claimed that the witness, instead of being corroborated, has been contradicted in such a manner as to render his testimony unworthy of belief.

Another defence relied upon is that the defendant could not have committed this offence, because he was not at the hotel where Miss Osborne was staying on the day when, according to the theory of the commonwealth, this most grave and serious offence was committed. In other words, the defendant relies upon an alibi so far as that day is concerned. [I leave the question to you as to the corroboration, simply saying, as I have said to you before, that unless the testimony of Evans is corroborated in a material part, it would be your duty to return a verdict in favor of the defendant.][3] You have a right, if you see fit, to disregard what I now say to you, and to bring in a verdict of guilty against the defendant, although the testimony of Evans is not corroborated in any material particular. But I take it, gentlemen, that you would not be behaving properly or wisely, if you should disregard what the court say to you upon that subject.

We come next to inquire with reference to the alleged contradiction of the witness Evans. You will remember that he fixes his first introduction to Dr. Cox, and, of course, his first conversation with him, as on January 16th. A large number of witnesses have been called by the defendant to show where Dr. Cox was on that day, and, if you believe those witnesses, then, to say the least of the testimony of Mr. Evans, he is mistaken. The testimony of the defendant and the testimony of Evans cannot, as I understand it, stand together, and either Mr. Evans is honestly mistaken as to the date, or he is intentionally mistaken as to the date. If he is intentionally mistaken, if he has sworn falsely, knowing that he was swearing

Charge of Court below.

falsely, then that would make his testimony utterly worthless in the cause.

We come next to January 30th, which is the day fixed by the witness Evans, as the day when Miss Osborne was brought to the Franklin House, and the day when the witness says he had the second conversation with Dr. Cox, the defendant. Here again the defendant has produced witnesses for the purpose of showing that this could not be so ; for the purpose of showing that Dr. Cox on that day was at his own home, seventeen miles away from the city of Easton, attending to patients and transacting business. You must determine whether this testimony can be reconciled with the testimony of Evans. If you find that it cannot be reconciled, you may find that the witness has been honestly mistaken, and, if so, it would not affect his credibility. If, on the other hand, you should find that this was a false statement, and that Evans made the statement knowing it to be false, that, of course, as I said with reference to the first date, would utterly destroy his worth as a witness.

The next point of time to which I would direct your attention is February 11th, two days before Dr. Field was called in to attend Miss Osborne.

It is the theory of the commonwealth that this abortion was committed either on the 11th—I believe the theory of the commonwealth is, that it was committed on the 11th of February, and they have produced a witness, Mr. George Givens, to show that the defendant was in Phillipsburg on that day. The defendant admits, not only that he was in Phillipsburg on that day, but he admits that he was also in Easton. But it is claimed by his counsel, and it is for you to determine whether it is so or not, that Dr. Cox is accounted for by witnesses for all the time that he was in the city of Easton on that day, and it is contended that it was impossible for him to have committed this terrible crime. Here again you must examine this testimony and say what credence is to be attached to it. If you believe it, and you believe that it covers the entire ground, then, whoever may have been guilty of this offence, it could not have been Dr. Cox.

\*      \*      \*      \*      \*      \*      \*      \*

I do not know that I have anything further to say to you at

this late hour of the day, except to answer the points which have been presented by the counsel for defendant. They are three in number:

1. If the jury should find that an abortion was produced in the manner described in the indictment, but cannot say beyond a reasonable doubt whether it was performed by Jennie Osborne herself or by some other person, the jury ought to acquit.

Answer: I affirm this point.

2. If the jury should find that there is no corroboration of George B. Evans, a self-confessed accomplice, in relation to Dr. Cox's connection with the perpetration of the offence, such testimony is so corrupt that it is deemed unsafe to rely upon it, and the court always consider it their duty to advise a jury to acquit where there is no evidence of corroboration of the accomplice.

Answer: I have already said that to you, in my general charge, and I affirm this point.

3. Corroborating evidence must not only be as to the commission of the offence by somebody, but must also be a corroboration of the fact that Dr. Cox committed it.

Answer: I cannot affirm this point, but say to you that there must be a corroboration of the testimony of the witness Evans in a material part.[1]

The jury returned a verdict that the defendant was guilty in manner and form as he was indicted. A rule for a new trial having been discharged, judgment was passed, when the defendant upon the allowance thereof took this writ assigning as error:

1. The answer to the defendant's third point.[1]

2, 3. The parts of the charge embraced in [ ][2] [3]

*Mr. Henry W. Scott*, for the plaintiff in error:

It is true that juries may convict on the uncorroborated testimony of an accomplice. It is true, also, that the control of a verdict so found is with the trial court, and not the subject of review. Yet juries are advised not to convict on such testimony. Such instruction was given here, and it is presumed juries accept such advice from the bench, and seek for corroboration in those particulars to which they have been directed as

necessary to sustain conviction. If erroneous instructions are given, the subject matter of such instructions becomes proper for review. There was no proof introduced to corroborate the testimony of the accomplice which implicated the defendant: Watson v. Commonwealth, 95 Pa. 424; Hester v. Commonwealth, 85 Pa. 139; Wharton Crim. Ev., § 442; Rex v. Wilkes, 7 C. & P. 272; Rex v. Dykes, 8 C. & P. 261; Rex v. Stubbs, 33 Eng. L. & Eq. 552–3; Rex v. Fowler, 8 C. & P. 107–8; Commonwealth v. Holmes, 127 Mass. 424, 431; State v. Potter, 42 Vt. 95; People v. Haynes, 55 Barb. 450.

*Mr. Russell C. Stewart, District Attorney,* for the defendant in error:

We take it to be settled as a matter of law: (1) A jury may convict upon the uncorroborated testimony of an accomplice if it satisfies them beyond a reasonable doubt of the guilt of the defendant. (2) The weight of corroborating testimony is for the jury, and when there is such evidence upon matter material to the issue, there is no rule of law obliging the judge to instruct the jury to acquit unless there is corroboration of the statements connecting the defendant with the crime. (3) The corroboration need not extend to every part of the accomplice's testimony, for there would be no occasion to use him at all as a witness if his narrative could be completely proved by other evidence free from suspicion. (4) The practice of requiring corroboration at all, and the instructions of the court concerning the kind of corroborative testimony in each case, must rest in the discretion of the trial judge, and are not subject to review by a higher court upon a writ of error: Ettinger v. Commonwealth, 98 Pa. 345; 1 Greenl. Ev., 13th ed., § 380; Wharton Crim. Ev., 8th ed., § 441; 3 Russell on Crimes, 9th ed., *600; Joy, Ev. of Accomp., 98–99; Commonwealth v. Scott, 123 Mass. 223; Commonwealth v. Holmes, 127 Mass. 440; Carroll v. Commonwealth, 84 Pa. 107; Duffy v. Commonwealth, 6 W. N. 312; Kilrow v. Commonwealth, 89 Pa. 480.

OPINION, MR. CHIEF JUSTICE PAXSON:

It was conceded upon the argument that juries may convict upon the uncorroborated testimony of an accomplice, and that

when they do so convict the control of the verdict is with the
trial judge, and is not reviewable here. Upon the trial below,
the learned judge explained very clearly and emphatically to the
jury the character of the testimony of an accomplice, and the
danger of convicting upon such evidence unless it is corrobo-
rated by other uncontradicted testimony in the cause. By the
defendant's third point the court was asked to instruct the jury
that: " Corroborating evidence must not only be as to the com-
mission of the offence by somebody, but must also be a corrob-
oration of the fact that Dr. Cox committed it; " which point was
answered as follows: " I cannot affirm this point, but say to you
that there must be a corroboration of the testimony of the wit-
ness in a material point."

The defendant was a physician, residing in New Jersey, and
was indicted and convicted of having produced an abortion on
a young unmarried woman, in the borough of Easton. She
also resided in New Jersey, and was brought to Easton for that
purpose by one George B. Evans, a New York drummer with
an unsavory record. It appears by his own sworn testimony,
that to oblige a friend residing in Danbury, Connecticut—a
man of about the same grade of humanity as himself, and whose
intercourse with this unfortunate girl was the occasion of this
dark story of crime—he brought her to Easton for the avowed
purpose of procuring an abortion upon her, and thus conceal
the crime and its fruits. Evans was jointly indicted with the
defendant and some others, and upon the trial was called by the
commonwealth as a witness. He was the accomplice referred
to in the point. He testified to having engaged Dr. Cox to
commit the offence; he brought the girl to Easton, lodged her
at a hotel, and arranged the preliminaries. Just here he drops
out of the case. He did not testify to the actual commission
of the offence: the abortion was procured on the eleventh of
February; at least such was the commonwealth's theory, and
the evidence strongly points that way, while the testimony is
that Evans did not see the defendant between the thirteenth
of January and that date.

The defendant was not, and could not have been convicted
upon the testimony of Evans. Assuming it all to be true, it
did not prove the actual commission of the offence. The cor-
pus delicti was proved—at least to the satisfaction of the jury

—upon independent testimony.   It was entirely circumstantial; and, while the testimony of Evans doubtless formed a portion of the bundle of sticks, which, when combined, proved too strong for the defendant, yet the fact remains, that he did not testify to the actual commission of the offence, and upon this point was not, and could not have been corroborated.   As to the matters to which he did testify, he was contradicted in some matters, and corroborated in others.   One of the strong points of corroboration was the testimony as to the nurse.   That the defendant engaged her to come to Easton was not denied.   For what purpose was a nurse procured for a healthy young woman unless an abortion was contemplated?   The sufficiency of the evidence of the actual perpetration of the offence is not before us, and we will not comment upon it further than to say that while purely circumstantial it certainly did point to the defendant with considerable force.   All this was fairly left to the jury, and we see no error in the instructions of the court.   The point referred to did not fit the facts of the case, and for this reason we have not discussed the authorities cited.

The second and third assignments contain respectively a brief extract from the charge of the court.   We do not find error in either, whether we treat them as isolated passages or in their proper connection with the charge as a whole.   The first (second assignment) was a mere direction to the jury that in weighing the facts of the case they should ascertain whether they corroborate the testimony of the witness Evans "in any material particular;" while in the other portion (third assignment) the learned judge went beyond the law, in favor of the defendant. He said: "I leave the question to you as to corroboration, simply saying as I have said to you before, that unless the testimony of Evans is corroborated in a material part, it would be your duty to return a verdict in favor of the defendant."   This, as before remarked, was more favorable to the defendant than he was entitled to, and it is now referred to, not as essential to the determination of the case, but merely to prevent misapprehension in the future.   The learned judge below did his full duty, under all the authorities, in cautioning the jury as to the danger of convicting upon the uncorroborated evidence of an accomplice.   He was not bound to instruct them to acquit in the absence of corroboration.   A jury may believe an uncorrobo-

rated accomplice, and if his testimony produces in their minds a conviction of the defendant's guilt, beyond a reasonable doubt, they may convict. If the testimony of the accomplice, his manner of testifying, his appearance upon the witness stand, impress a jury with the truth of his statement, there is no inflexible rule of law which prevents a conviction. In such case it is for the trial judge who also heard the witness, noticed his manner and appearance upon the stand, and who can judge equally with the jury as to his credibility, to say whether he is satisfied with the verdict. If both the jury and the court are satisfied that he has told the truth, there is no reason why the verdict should not stand. If we lay down an inflexible rule in regard to corroboration, there may be instances when criminals will escape although both jury and court are satisfied beyond a reasonable doubt of their guilt.

> The judgment is affirmed, and it is now ordered that the plaintiff in error surrender himself forthwith to the custody of the jailer of the Northampton County Prison, there to serve the remainder of his sentence which had not expired when the writ of error issued.

