THE STATE OF WYOMING,
*Plaintiff and Respondent,*

vs.

ERNEST E. GRIDER,
*Defendant and Appellant.*

(No. 2652; May 24th, 1955; 284 Pac. (2d) 400)

92

For the defendant and appellant the cause was submitted upon the brief of Dick Westra of Riverton, Wyoming, and W. A. Muir of Rock Springs, Wyoming and oral argument by Mr. Muir.

For the plaintiff and respondent the cause was submitted upon the brief of Howard B. Black, Attorney General; Paul T. Liamos, Jr., Deputy Attorney General; James L. Hettinger, Assistant Attorney General; and Robert A. McKay, Assistant Attorney General and oral argument by Mr. Black.

OPINION

BLUME, Justice.

The defendant, Ernest E. Grider, was convicted of forgery and sentenced to the penitentiary for a period of five to seven years. The county and prosecuting attorney of Fremont county, Wyoming, filed an information against the defendant on October 21, 1953. This information was quashed and an amended information was filed on October 22, 1953, which leaving out the caption and affidavit attached thereto is as follows, to-wit:

"Ernest E. Grider, * * * being a person, did wil-

fully, and maliciously, and unlawfully, and feloniously, cause to be attempted to be passed, and cause to be uttered, and published, and passed, and attempted to pass, and did utter, and publish, and pass, as true and genuine, a certain promissory note, for the payment of money, and property, which said promissory note, together with all endorsements thereon, is in words and figures as follows, to-wit:

PROMISSORY NOTE     2200584-1-15     No...............

$2864.37                              May 18, 1951

FOR VALUE RECEIVED, the undersigned as principals, jointly and severally promise to pay to Noble Lumber Co., or order, the sum of Two Thousand Eight Hundred Sixty Four 37/100 DOLLARS, ($2864.37) in 2 consecutive annual installments of $1432.19 each (except that the final installment shall be the difference between the amount of this note and the sum of the preceding installments), the first to become due and payable May 15, 1952, balance of installments to be paid on the same date of each month thereafter, with interest on principal after maturing of entire balance as herein provided at the highest lawful contract rate, and 15% of the principal and interest of this note, or, at the option of the holder ,a reasonable sum as attorney's fees if placed in the hands of an attorney for collection after maturity. If any installment is not paid when due, the entire balance of this note shall become due and payable at the option of the holder. Authorized FHA 'late charges' (5c per $1, maximum $5) are payable on any installment more than 15 days in arrears. The makers, endorsers and guarantors of this note waive presentment for payment, protest, notice of protest, demand for payment, notice of non-payment, and declaration of acceleration of payment. If permitted by law, each maker, endorser (except without recourse) and guarantor of this note hereby authorizes any attorney, prothonotary or clerk of court of any court of record to appear in court, in term time or vacation, at any time after maturity of this note, and waive a jury trial and confess judgment without process in favor of the holder of this note for such amount as may appear to be unpaid thereon, together with costs and attorney's fees, and waive and

release all errors which may intervene on any such proceedings and consent to immediate execution upon such judgment, hereby ratifying and affirming all that may be done by virtue hereof. Insofar as permitted by law, each maker, endorser and guarantor of this note expressly waives all right to claim exemption allowed by the Constitution and laws of this or any other state.

SIGNATURES: (In Full and In Ink)

Negotiable and payable at any
Office of ALLIED BUILDING
CREDITS, INC., with exchange, TDNB,

/s/ Leonard Kosmiski
(Seal)

"which said promissory note being a false, and forged promissory note, for the payment of money, and property, the said Ernest E. Grider knowing the same to be false, and forged, with intent to prejudice, and to damage, and to defraud a person, to-wit: The person of Noble Lumber Company, a Wyoming Corporation, a body corporate, and so did, Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

A motion to quash the amended information and a demurrer were filed and were overruled. The defendant pleaded not guilty. The case was tried commencing December 14, 1953.

The defendant was a contractor contracting to erect buildings or additions thereto. And on a number of occasions, as it seems, caused the parties for whom he did his work to obtain a loan from the Federal Housing Administration—in this case Allied Building Credits, Inc. He had in his employ one Marion C. Jensen who was to contact people who might wish to have a building or an addition thereto constructed. On May 13, 1951, the defendant and Jensen, who lived at Riverton, Wyoming, went to see one Leonard Kosmiski who resided at or near Kinnear, Wyoming, some miles out of Riverton. They saw Kosmiski and talked with him

about having an addition made to his house. Kosmiski testified that he refused to have the defendant do any construction work for him or to furnish any materials; that he did not sign any of the papers and note hereinafter mentioned; and did not authorize anyone to attach his signature thereto. It appears that, in order to obtain a loan from the Federal Housing Administration, a number of papers are to be executed, namely:

1. An application addressed to the Federal Housing Administration for the loan. (In this case the Allied Building Credits, Inc.)

2. A contract entered into between the person whose house or addition is to be constructed and a contractor.

3. A cash down payment certificate.

4. A completion certificate.

5. A note.

The forms used in the case at bar, as evidently in other cases, were printed with only some blanks to be filled in. On May 14, 1951, the defendant and Jensen met at the Teton Hotel in Riverton, Wyoming, and according to the testimony of Jensen, the defendant at that time filled in the blanks on the various papers above mentioned, except the note and part of the completion certificate, and asked Jensen to sign Kosmiski's name to these papers. Jensen testified Grider stated that it was all right with Mr. Kosmiski. "He told me, when he asked me to do this, that Mr. Kosmiski—it was all right with him, and if he did not do any work that he would take care of the loan himself and pay this loan back in the event that Mr. Kosmiski could not see his way clear to go ahead with the job." Jensen further stated that while Kosmiski had told him and Grider that they might use his name to see whether or not Kosmiski could get a loan, he did not testify that he, Jensen, had authority to sign Kosmiski's name to any

documents. He further testified that he signed the various papers, consisting of an application for a loan, a contract purporting to be between defendant (in the name of U. S. Construction Company) and Kosmiski, the certificate showing the down payment, the certificate showing completion of the work, and the promissory note in question, all at the request of the defendant who thereupon took possession thereof. The application for a loan, the contract, and the certificate for the down payment are dated May 14, 1951. The completion certificate and the note are dated May 18, 1951. The defendant took these various documents to the Noble Lumber Company at Riverton, Wyoming. The blanks in the note were filled in by Fallbeck, manager of the lumber company, and he testified that this was done at the request of the defendant, the note being dated May 18, 1951, for the sum of $2,864.37, and payable in two installments, the first being due on May 15, 1952. Pursuant to this transaction, the Noble Lumber Company gave the defendant a check in the sum of $1,600.04 and also gave him lumber to the value of about $900. The check was cashed by the defendant. The lumber was put in a warehouse but consumed on various other works undertaken by the defendant. No work was ever done for Kosmiski and no material was ever furnished him by defendant. The Noble Lumber Company sent this note to the Federal Housing Administration (the Allied Building Credits, Inc.), and it received thereon the sum of $2,500, which it subsequently repaid.

Defendant admitted using the money and the lumber which was turned over to him by the Noble Lumber Company. He testified that Kosmiski gave Jensen permission to sign his name to the papers and that he asked Jensen as to whether or not he would sign Kosmiski's name to the papers; and that Jensen said he would prefer to have Kosmiski sign them; that on May

14, 1951, Jensen told him, the defendant, that Kosmiski had actually signed the papers himself and that he, the defendant, caused the loan to be finally executed on the strength of the statement made to him by Jensen. He further stated that he saw Kosmiski on or about May 17, 1951; that at that time Kosmiski asked him to hold up the deal; that thereafter he called the lumber company and was then told it was too late, as the note had already been sent in; that he did not definitely know that Kosmiski had not signed the documents until about December 1, 1951, when Kosmiski told him that he had not signed them.

The defendant herein was charged with violation of the provision of Section 9-1002, W.C.S. 1945, which, among other things provides that: "Every person who shall falsely make, alter, forge or counterfeit any * * * writing obligatory, or promissory note for money, or other property, or shall counterfeit or forge the seal or hand writing of another, with intent to damage or defraud any person or persons, body politic or corporate, * * *; or shall utter, publish, pass or attempt to pass as true and genuine, or cause to be uttered, published, passed or attempted to be passed, as true and genuine, any of the above named false, altered, forged or counterfeited matters as above specified and described, (knowing the same to be false, altered, forged or counterfeited), with intent to prejudice, damage or defraud any person or persons, body politic or corporate, * * * shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not more than fourteen (14) years."

It is argued by counsel for the defendant that the court erred in not quashing the amended criminal complaint. Several reasons are alleged. The information charged that the promissory note was given for money

*and* property. Counsel say it was not given for the payment of property, and for that reason the motion to quash should have been sustained. It is true that the note was not given for the payment of property. The note was set out in haec verba so the defendant could not have been misled. Complaint is also made that the information filed herein states that the note was passed to defraud the *person* of the Noble Lumber Company, a Wyoming Corporation, whereas the lumber company is not a person. The language used is not accurate. A corporation is not exactly a person, though similar to a person. However, the objection is technical and could not have prejudiced the defendant. It is also argued that the information states that the defendant not alone passed, but attempted to pass the note as genuine. It is argued that the two methods mentioned in the information made it so indefinite that the defendant could not know with which crime he was charged. However, the information merely states both methods by which the statute above quoted can be violated and we have held that: "It is a well settled rule in criminal pleading that, when an offense against a criminal statute may be committed in one or more of several ways, the information may, in a single count, charge its commission in any or all the ways specified in the statute, if not inconsistent, and proof of either of the ways will sustain a conviction." Thompson v. State, 41 Wyo. 72, 283 P. 151, 155. See also State v. Catellier, 63 Wyo. 123, 156, 179 P. 2d 203.

Counsel also argue that the demurrer to the information should have been sustained. The reason alleged therefor is that the instrument set out in the information is not a promissory note. The objection is without any merit. Counsel themselves cite us to 8 C.J. 115 where it is stated: "No particular words are required in a note but any form of expression is sufficient from which can be deduced a direct undertaking to pay the

sum specified." The note in question promised to pay to the Noble Lumber Company the sum of $2,864.37 in two annual installments of $1,432.19 each. That is clearly a promissory note. Whether or not it is negotiable is wholly immaterial and need not be determined in view of the fact that the statute does not require the note that is forged to be negotiable.

It is argued that the court erred in admitting in evidence Exhibits 1 to 4 and Exhibit 6. The only objection made at the trial was that the corpus delicti had not been proven. Exhibit 1 was the application for a loan; Exhibit 2, the contract between defendant and Kosmiski; Exhibit 3, the certificate that $300 was paid down by Kosmiski; Exhibit 4, the certificate that the work had been completed; Exhibit 6, the check which the defendant received from the Noble Lumber Company. It is true that when these exhibits were admitted in evidence, it had not yet been proved that the signature on five of the instruments had been forged, and it would, perhaps, have been better if the testimony of Kosmiski had been offered first, so as to show the beginning of the crime with which the defendant was charged. It is said in 23 C.J.S. 443, 444: "As a matter of practice it is preferable to prove the corpus delicti before any evidence is offered to implicate accused; * * *. The matter, however, is largely discretionary with the trial court * * *."

It is now objected further that these exhibits did not tend to prove the crime with which the defendant was charged. But the giving of the promissory note and the giving of the check to the defendant were merely the completion of the loan which the defendant attempted to obtain and actually obtained. All of these exhibits illustrated the transaction and were part of the res gestae. We find no error in the admission of these exhibits.

It is argued by counsel for the defendant that there is a fatal variance between the information and the proof in that the promissory note set out in the information was not the instrument handed by the defendant to the Noble Lumber Company; that the evidence shows the blank places on the note were filled out by the manager of the Noble Lumber Company. In the case of People v. Gorham, 9 Cal. App. 341, 99 P. 391, it is stated in the syllabus: "Leaving blank the name of the payee of a check gives to any bona fide holder for value implied authority to fill the blank with his own name or that of a third person * * *." The rule in that case is, we think, clearly applicable in the case at bar. In fact the evidence in this case goes further and shows that the defendant requested the manager of the lumber company to fill in the blanks. The fact that the California case involved a check and the case at bar involves a promissory note does not, in our judgment, make any difference. The principle involved is the same. The objection in this connection therefore must be overruled.

Error is assigned that the court admitted in evidence Exhibit No. 7. That exhibit consists of a letter dated a year after the promissory note in question here was executed. The letter is as follows:

"May 18, 1952,

"Gentlemen:

I am a few days late in letting you know, that I will not be able to make my payment at this time.

I have waited hoping that I would not have to ask for an extension of time, but due to farm sales I will not be able to make this payment until July 15th.
I will definitely be able to make the full payment on this date, and am hoping this will be satisfactory.

Very truly yours,

/s/ Leonard Kosmiski
Kinnear, Wyoming"

The testimony of Jensen shows that Kosmiski received a communication from the Federal Housing Administration that part of the loan herein was due. Kosmiski thereupon communicated with Jensen. The latter telephoned Grider, who, at that time, seems to have been absent from Riverton. Grider at that time stated he would take care of the matter. He thereupon dictated, as he himself testified, the letter in question. Jensen testified that he received a letter from defendant telling him to sign and send the letter above set out and that he did so.

This matter has given us considerable trouble. Neither the brief of counsel for the State nor that of counsel for the defendant has given us any help in solving the question before us. The State has not shown us how the evidence was relevant, nor have counsel for the defendant shown us how the admission of this evidence is prejudicial to the defendant. Counsel have failed to analyze the matter now before us. So we have been compelled to make an independent investigation. It is quite apparent that the defendant drafted this letter with the view to give him time to pay the promissory note in question here. He thereby acknowledged that he, not Kosmiski, owed it. But that, of course, is merely corroborative of the fact that he owed the amount of the note, and there can be no doubt of that fact since Kosmiski received no value and the defendant received all the proceeds. The letter in and of itself is wholly harmless and of no significance, even though the signature of Kosmiski thereto was forged, since there was no intent to defraud manifested therein. The only significance in that connection is the testimony of Jensen that defendant asked him to sign the letter in Kosmiski's name, thus tending to show that defendant had no hesitancy in asking Jensen to sign the name of Kosmiski to a document and thus corroborating the testimony that he previously did so in connection with

the promissory note in question. No objection was made to the testimony that defendant asked Jensen to sign the letter and that Jensen did sign it. That testimony only and not the letter itself was of importance, so that whatever objection was made, came too late. However, let us go on a little further. The signature of Kosmiski to the letter was forged by Jensen at the request of the defendant. It is true, as already stated, that the forgery was not criminal since there was no intent to defraud. Still the situation is analogous to a situation where another crime, but of like nature, is attempted to be proved. Generally another crime cannot be shown. But there are exceptions to the rule. The subject is considered at length in 22 C.J.S. 1089 and subsequent pages. Speaking of forgery, it is stated in 22 C.J.S. § 691, pp. 1136, 1137:

"While in prosecutions for forgery and for the cognate offenses of possessing, uttering, passing, and disposing of forged instruments, evidence of other criminal acts of accused, including other forgeries, not connected with, or too remote from, the act charged is not admissible, evidence, properly introduced, of the connection of accused with other forged instruments, or with related or similar offenses, committed at or about the same time as the one charged, or shortly before or after, is admissible to show the intent with which the act charged was committed, guilty knowledge, absence of mistake or accident, a general scheme, system, or course of conduct, of which the act charged formed a part, identity, and motive."

The letter and the oral testimony in connection therewith cannot, perhaps, be strictly said to be part of the res gestae. Still it seems to be a chain in the circumstances herein showing the defendant's guilt. Whether or not the period of time in which another crime is shown to have been committed is too remote seems generally to be in the discretion of the trial court. 22 C.J.S. 1138. While a doubt lingers in our minds whether

the letter or the oral evidence in that connection should have been admitted, we think that in view of all the facts in this case, particularly in view of the fact that no objection was made to the oral testimony above mentioned, we cannot say the court committed a reversible error.

It is contended that the court erred in giving Instruction No. 5 and failing to give the asked Instruction No. B. As to the first, all that is necessary to say is that no exception was taken to the instruction and hence no error can be based on giving it. Instruction No. B is as follows:

"The court instructs the jury that there has been evidence offered to show that Mr. Leonard Kosmiski authorized his name to be affixed to the promissory note, the state's exhibit No. 5 and if you believe, or have a reasonable doubt as to the existence of such authority, then you must find the defendant not guilty."

The instruction is not based upon the evidence in the case. Witness Jensen testified that Kosmiski told him and the defendant that they could use his name to see if they could get a loan but that does not mean they were authorized to sign Kosmiski's name to any documents. In fact speaking of Exhibit 1, the application for a loan, the testimony of Jensen is as follows: "Q. Did he (Kosmiski) authorize you to write his name upon this particular instrument? A. "No." It follows, therefore, that no error can be predicated upon the failure to give the instruction that was asked.

It is insisted by counsel for the defendant that Jensen was an accomplice of the defendant; that his testimony should be accepted with caution, and that the court should have given a cautionary instruction as mentioned in the case of State v. Callaway, Wyo., 267 P. 2d 970. In State v. Ean, 90 Iowa 534, 58 N.W. 898, 899, the court held that an accomplice is one who is

joined or united with another, one of several concerned in a felony; an associate in a crime; one who cooperates, aids or assists in committing it. According to that definition, Jensen was an accomplice. It does not appear that he was mentally incompetent, or that he was forced to forge the name of Kosmiski. Courts cannot encourage acts, criminal in nature, such as the forging of another's name. So that there can at least be no doubt that Jensen acted not as an employee, but as a servant, abjectly obeying his master's nod. However, many courts hold that an accomplice is one who acts with common intent with the principal offender. See 1 Words and Phrases 431. And it is not certain that Jensen acted with intent to defraud. So we prefer not to say at this time whether or not he was an accomplice of the defendant.

Even if Jensen was an accomplice, it does not necessarily follow that the failure to give a cautionary instruction is fatal. We reviewed all the Wyoming cases bearing on this subject in State v. Callaway, supra, and we there held that if there is no corroborating testimony of an accomplice it is incumbent on the court to instruct the jury that the uncorroborated testimony of an accomplice should be accepted with caution. We have no reason to depart from that holding. But we have not yet held that such cautionary instruction must be given in all cases in which an accomplice testifies, although it is doubtless the safer course for the trial court to do so, particularly where there is any doubt on the point at all. The situation in the case at bar is altogether different from that in State v. Callaway, supra. There was much corroborating testimony. One of the main facts, the forging of the name of Kosmiski, was testified to by Kosmiski. Defendant presented a forged instrument to the Noble Lumber Company. He realized all the profits thereof, and kept them without authority. While it is not necessary to determine the

point, it is not improbable that the jury could have legally convicted the defendant even though the witness Jensen had not testified at all. In Commonwealth v. Bruno, 316 Pa. 394, 175 A. 518, 521, the court stated: "Although it is a common and wholesome practice for trial judges to warn the jury as to the care they should take in weighing the testimony of alleged accomplices and the importance of corroboration of such testimony, a failure so to instruct is not reversible error unless a clear abuse of judicial discretion is shown. Com. v. Elliott, 292 Pa. 16, 140 A. 537. No abuse of discretion has been shown in the present case." See the views of courts generally as stated in 23 C.J.S. 791. We think that in the case at bar the failure to give a cautionary instruction as mentioned cannot be held to have been fatal, particularly since defendant did not ask one to be given.

It is contended that the evidence in the case is insufficient to prove beyond reasonable doubt that the defendant intended to defraud. We think counsel is mistaken. It is stated in 37 C.J.S. § 87, p. 96: "The benefit obtained by accused, the disposition made by accused of proceeds derived from the uttering of the forged instrument, or the injury occasioned to the person to whom the instrument was passed, may be shown." These facts were shown in the case at bar. In 37 C.J.S. § 100, p. 104, it is stated: "The intent to defraud is to be inferred from the deliberate commission of a forgery. Thus knowingly passing a forged instrument as genuine is conclusive of an intent to defraud. Evidence that the advantage which the instrument, if genuine, would have given has been obtained, or that the injury which such an instrument could inflict has been accomplished, sufficiently shows an intent to defraud." We think the elements here mentioned have been shown by the evidence in the case at bar and the objection here

mentioned on the part of counsel for defendant must be overruled.

It is contended by counsel for defendant that the evidence does not show that the Noble Lumber Company is a Wyoming corporation as alleged in the information. There is ample evidence in this case to show that the lumber company is a corporation. It was substantially the same as noted in the case of State v. Callaway, Wyo., 267 P. 2d 970. The term "Wyoming Corporation" is equivocal. It may mean that the corporation was organized under the laws of Wyoming, of which there is no evidence. It may also mean that it is a corporation doing business in the state of Wyoming. There is ample testimony to that effect. We think the objection made should be overruled, particularly in view of the provisions of Section 10-709, W.C.S. 1945, which provides as follows:

"It shall be sufficient in any indictment where it shall be necessary to allege an intent to defraud, to allege that the party accused did the act with intent to defraud, without alleging an intent to defraud any particular person or body corporate, and on the trial of any such indictment, it shall not be necessary to prove an intent to defraud any particular person, but it shall be sufficient to prove that the party accused did the act charged, with the intent to defraud."

It is argued that it has not been shown that the crime in question was committed in Fremont county, Wyoming. Without setting out the testimony in that connection, we find no merit in that contention.

Counsel argue that no intent to defraud can be found herein on account of the fact that all the parties were anxious to get the loan in question herein. Counsel call attention to Exhibit 4 which is a certificate dated May 18, 1951, as to the completion of the work that was supposed to have been done on Kosmiski's building.

On that date the Noble Lumber Company made the following certificate:

"For the purpose of inducing the payment of proceeds of this loan and the insurance thereof by the FHA the undersigned certifies and warrants that the above work or materials constitute the entire consideration for which this loan is made, that a copy of the contract or sales agreement has been delivered to the borrower and the above financial institution, that this work was satisfactorily completed or materials delivered, that the above certificate was signed by the borrower after such completion or delivery, and that the signatures hereon and on the note are genuine."

This certificate troubled us, since we have little knowledge of the law governing loans by the housing administration. Upon examination, it seems clear that no loan may be obtained from it until the work is done and the material is furnished—doubtless for the purpose of protecting the man who has the work done and who has limited means. In this case the certificate was not true. Hardly four days intervened between the purported application and the date of the certificate. It was, of course, wholly unlikely that an expenditure of some $2,800 would be made on Kosmiski's building during so short a time. Not alone should the lumber company have known that fact but the Federal Housing Administration as well. The loan in this case should not have been made. The Noble Lumber Company, as well as the Federal Housing Administration, unwittingly, but nevertheless unfortunately in part created for the defendant the opportunity for the commission of the crime here in question. But, of course, even though that opportunity was furnished, it did not justify the defendant in committing the crime.

We find no reversible error in the record, and the

conviction herein and judgment of the district court are affirmed.

*Affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.

## ON PETITION FOR REHEARING

(No. 2652; October 18th, 1955; 288 Pac. (2d) 766)

## OPINION ON REHEARING

BLUME, Justice.

A petition for rehearing has been filed in this case. Every point now raised was fully and carefully considered and discussed in the original opinion except the point, now raised for the first time, that if any crime was committed it was that of obtaining money under false pretenses, rather than that of forgery, which carries a penalty nearly as severe as that of forgery. It is now too late to raise that point. However, we may say that it may well be the defendant might have been prosecuted for that crime rather than for forgery. But we do not think the State, under the facts herein, was prevented from prosecuting him for the latter crime.

Counsel argue that the defendant, as an experienced contractor, knew that if he would engage in a forgery with which he is charged "the road would be short, rough and would end abruptly." One would have thought so. It was rather shocking to the writer to

find that a man of apparent intelligence should attempt to obtain money in such bungling manner as seems to have been true in the case at bar. To carry the statement of counsel to a logical conclusion, defendant also knew or should have known that to use money which did not belong to him, as he did, the road would be just as short and rough. He obtained $2,500 which he did not borrow and which did not belong to him. He used it illegally. It is difficult to see how he could hope to escape the penalty for doing so, no matter by what name the illegal method by which he obtained it is called.

Counsel argue again the point of intent to defraud. It may well be that at the time the forgery was committed the defendant merely intended to persuade Kosmiski to let the defendant do the work of repairing Kosmiski's home and when he found he could not do so he used the money obtained by him intending in good faith, as he told Jensen, to personally pay the note in question herein and subsequently found himself in the unfortunate circumstance of not being able to do so. That is not an improbable explanation of the facts; and while not excusable, the sentence imposed on the defendant was, in that light and considering all the circumstances in the case as stated in the original opinion, perhaps rather severe. But the answer to all that is that this court is not a fact-finding body—a fact which counsel frequently overlook or choose to ignore. We cannot arbitrarily substitute our opinion for that of the jury. The function of this court is merely to declare the law. The sole question before us is as to whether or not there was evidence in the record sufficient to justify the jury in finding that there was an intent to defraud. We cited authorities on that point in the original opinion which counsel have evidently not considered, and which show that, as a matter of law, the evidence was not alone sufficient but ample.

Hence, limited as our power is, we cannot see how we are justified in interfering with the verdict of the jury and see no reason for a rehearing.

Counsel for the defendant, who have not heretofore appeared for him, have taken a great amount of care in preparing their brief which accompanies the petition for rehearing. Their arguments are able, and at times call on the emotion. However, after reading over again our original opinion and considering it carefully in the light of the petition for rehearing, we are not persuaded that we were wrong in any of our conclusions. A second oral argument would not help us any. The petition for rehearing must accordingly be denied.

*Rehearing denied.*

RINER, C. J., and HARNSBERGER, J., concur.